**Jerome R. TUOHY, Plaintiff,**

v.

**FORD MOTOR COMPANY, a Delaware Corporation, Defendant.**

**Civ. A. No. 79–71517.**

United States District Court, E. D. Michigan, S. D.

May 19, 1980.

---

William D. Parsley, Kenneth W. Beall, Loomis, Ewert, Ederer, Parsley, Davis & Gotting, Lansing, Mich., for plaintiff.

Jesse Womack, Kermit G. Bailer, Dearborn, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

Plaintiff, a pilot formerly employed by defendant's Air Transportation Office, brought this action pursuant to 29 U.S.C. 621 *et seq.* and M.C.L.A. § 37.2101 *et seq.* in an attempt to overturn the defendant's employment rule that no one over the age of 60 will be employed as a pilot. Defendant, basing its position entirely on a regulation promulgated by the Federal Aviation Administration, asserts that its employment rule is consistent with the theory of that regulation and that it may lawfully discriminate on the basis of age in this narrow area.

The following facts are not in dispute. Defendant operates its own private air transportation system to move executive personnel quickly and efficiently. Plaintiff was employed by defendant from 1954 until 1978, first as a co-pilot, and then as a pilot. Defendant terminated plaintiff's employment in this capacity in December of 1978 when plaintiff reached the age of 60.

While defendant does not dispute the general proposition against discrimination based upon age as contained in 29 U.S.C. 623(a) and M.C.L.A. § 37.2202(1)(a), it claims that the Federal Aviation Administration regulation which prohibits the use of pilots over the age of 60 by commercial air lines, 14 C.F.R. § 121.383(c), justifies its position that the rule being challenged in this case is excepted from the general rule by 29 U.S.C. § 623(f)(1) and M.C.L.A. § 37.2208.

Those sections of the Age Discrimination in Employment Act and Elliott Larsen Civil Rights Act permit age discrimination in situations where the employer can show that

age is a "bona fide occupational qualification" (bfoq) "reasonably necessary to the normal operation" of the particular business. Defendant contends that its rule meets the statutory test.[1]

Plaintiff asserts that in order to come within the narrow exception relied upon, defendant must convince the finder of fact that its rule is "reasonably necessary." The only real dispute between the parties involves the weight to be accorded to the FAA regulation. Defendant asserts that the regulation alone is sufficient to justify the rule in question. Plaintiff, on the other hand, argues that a bfoq may only be established after a finder of fact has been given an opportunity to consider and weigh all of the evidence presented on both sides of the issue. Thus, it is plaintiff's position that while the regulation may be of some evidentiary force, it is not of such force as to prevent the plaintiff from presenting opposing evidence to the finder of fact.

The underlying dispute between the parties is whether or not there is a way to predict, independent of age, the likelihood that a pilot over the age of 60 will suffer a sudden illness which would endanger the lives of his or her passengers. After reviewing the state of medical science, the FAA determined, in promulgating the regulation relied upon by defendant, that predictions based on factors other than age were not sufficiently practicable given the enormous risks involved. The plaintiff asserts (1) that the FAA was incorrect and (2) that even if the FAA was correct at the time, advancements in medical science since that time have been such as to completely undermine the basis for continued reliance on the regulation.[2]

Plaintiff wants an opportunity to present all of his medical evidence to a jury and let them decide whether or not the defendant's employment rule is "reasonably necessary." Defendant asserts that the law does not force it to meet plaintiff's medical evidence or to present the issue to a fact finder. Defendant believes that it may rely wholly upon the theory of the FAA which underlies the regulation.

Thus, the question presented by defendant's motion for summary judgment is whether or not 14 C.F.R. § 121.383(c) in and of itself establishes a bfoq which permits defendant to terminate pilots in its private air transportation system simply because they have reached the age of .60. The court believes that in order to give proper deference to an administrative agency which is much better equipped than is the court to handle issues concerning the safety of those involved in domestic air traffic, and in order to avoid a needless duplication of effort, it is bound to answer the question affirmatively.

The law in this area is still in its formative stages, but by analyzing the cases which have construed the statute involved, the court finds that while there is a major dispute between the parties over the actual ability of doctors to predict sudden incapacitating illnesses, this factual dispute is not material to the question presented and will not prevent the entry of summary judgment in favor of defendant.

## I.  THE TEST TO BE APPLIED

The two leading statements of the burdens on employers attempting to establish

---

1. Michigan law does not differ from federal law in this area, so the discussion will speak in terms of federal law only. See *Civil Rights Commission v. Chrysler*, 80 Mich.App. 368, 263 N.W.2d 376 (1977).

2. It is important to note that the plaintiff is challenging neither the FAA's power to promulgate the regulation in question nor the binding nature of that regulation on the commercial air line industry. By its terms, the regulation itself does not apply to the relationship between this plaintiff and this defendant.

Defendant's air transportation operation is covered by Part 91 of Title 20 of the Code of Federal Regulations, while the regulation in question is in Part 121 of that title which applies only to commercial operations. Plaintiff is saying that since the defendant's use of the regulation is by analogy only and since it takes the regulation beyond the purview given it by the FAA, the theory of the regulation is subject to attack. Plaintiff is attempting to fly through what appears to be a loophole in the FAA regulations.

bfoq's are contained in *Hodgson v. Greyhound Lines, Inc.*, 499 F.2d 859 (7th Cir. 1974), *cert. denied sub nom. Brennan v. Greyhound Lines, Inc.*, 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 822 (1975), and *Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224 (5th Cir. 1976).

In *Hodgson*, the Seventh Circuit held that the defendant bus company had established that its rule against hiring new drivers over the age of 35 fit into the ADEA exception for bfoq's. The court said that this result was compelled by the defendant's showing that the elimination of the rule might increase the risk of harm to defendant's passengers. In setting out this rule, the court indicated that any increase in the risk, no matter how minimal, would be sufficient to establish a bfoq.

Later, in *Tamiami*, the Fifth Circuit criticized some of the analysis in *Hodgson*, but it also held that a bus company was justified in setting a maximum age for new drivers (Here, the age was 40). The difference between the two opinions lies in the theories relied upon by the two courts.

The *Tamiami* court, building upon two sex discrimination cases, developed a two level test to be used in any case involving the bfoq defense. First, "the job qualifications which the employer invokes to justify his discrimination must be *reasonably necessary* to the essence of his business." 531 F.2d at 236. (Emphasis in original). Second, the employer must show either (a) that "it had reasonable cause, that is, a factual basis, for believing that all or substantially all persons over [the age relevant to the particular situation] would be unable to perform safely and efficiently the duties of the job involved," or (b) that "it is impossible or impractical to deal with persons [over a certain age] on an individualized basis." *Id.*

The first level of this test is designed to make certain that the qualification being scrutinized is one that is so important to the operation of the business involved that reasonable people would not expect the business to continue without it.

The second level is designed such that employers will only be permitted to discriminate on the basis of sex or age in situations where they have shown that they cannot successfully deal with prospective applicants as individuals. If only a minute percentage of those in a given age group or sex would be qualified, the law does not force an employer to undertake individual examinations to find the very few who are qualified. Similarly, if individual examinations would not enable the employer to distinguish the qualified from the unqualified, no such examinations will be required. Thus, the outer limits of the bfoq will be no wider than is necessary to permit the employer to conduct its business in a reasonable way.

Both *Hodgson* and *Tamiami* dealt with issues of safety to the public. In each case, the employer claimed that the challenged age limit was used in order to protect passengers from the disasters that could befall them if drivers were to suffer debilitating illnesses while on the road. Previous cases dealing with bfoq's had not dealt with this problem; they had focused only upon the interests of the persons being discriminated against. See *Diaz v. Pan American World Airways, Inc.*, 442 F.2d 385 (5th Cir. 1971); *Weeks v. Southern Bell Telephone and Telegraph Co.*, 408 F.2d 228 (5th Cir. 1969).

The *Tamiami* court criticized the way that the *Hodgson* court seemed to have lumped all of the parts of this issue together, but in its effort to define a neat test with which to solve every potential bfoq problem, the *Tamiami* court seems to have gone too far in separating the several considerations.

According to that court, the safety factor comes into play only on the first level of the test. If safety is involved, the court must determine whether or not it is something that goes to the "essence" of the business. If the court determines that safety is of the essence, then the court is to turn to the second level of the test without regard to the fact that it is safety that is at the heart of the bfoq.

This analysis may work well enough in some situations, but where the decision on

the second level of the test is a difficult and close one, the court must keep in mind the safety factor and the extent of the potential problems that could result. Here, plaintiff contends that he is in excellent health and that none of his passengers would be endangered by flying with him. Defendant, on the other hand, is concerned that the personnel who are piloted by the plaintiff may be in danger of losing their lives because of the possibility that plaintiff may become incapacitated during a flight.

The essential argument between the parties in this case is whether or not doctors are able to predict the likelihood of such incapacitation.

It is apparent from the submissions of the parties that some doctors believe that reasonably accurate predictions of this sort can be made with the knowledge that is presently at hand. Others, however, do not have this confidence in the profession's present capabilities.

If the only thing at stake in this situation were the plaintiff's job, this court would be more than willing to permit the finder of fact to look at the medical evidence and to decide which side's is more convincing. However, the court is compelled to consider more than the plaintiff. If the court were to prohibit the defendant from terminating the plaintiff, and if it then turned out that the defendant's experts had been right, many people might lose their lives. Under the *Tamiami* test, this potentiality would not be considered.

If the *Tamiami* test is followed as set out, the safety factor would play no part in the determination to be made regarding the medical evidence in this case. The court would treat this question as it would any other where experts testify on both sides, and it would permit the fact finder to make the ultimate decision.

█ Because the *Tamiami* test does not fully and practically address all of the problems presented by this case, the court believes that the second level of the test must be refined. It must be made flexible enough to take into account things such as the public interest which is involved wherever the safety of third persons is potentially threatened.

It is interesting to note a glaring difference in the burdens of proof imposed by the *Tamiami* court upon employers attempting to establish a bfoq under the first alternative of the second level and those attempting to do so under the second alternative. To satisfy the former, one need only convince the court that it has "reasonable cause" or "a factual basis" for its discrimination. By contrast, those, like defendant here, whose positions fall within the latter alternative are compelled to show in fact that it is impossible or impractical to make individual decisions.

As the test is written in *Tamiami*, it appears that some employers (those contending that "all or substantially all" in the class are unqualified) need only show that they have been *reasonable* in order to establish a bfoq, others (those contending that individual examinations will not separate the qualified from the unqualified in the class) must show that they have been *right*. The arguments of the parties in this case exemplify the important difference between these burdens.

Plaintiff argues that in order to establish the bfoq, defendant must convince the court that it is in fact right in its position that it is impossible to determine on an individual basis which persons over the age of 60 are likely to suffer sudden incapacitating illnesses. Defendant, on the other hand, asserts that it need only show that its position has a "reasonable" basis. To provide this basis, defendant argues that the existence of the FAA regulation mandates a finding that the position is reasonable.

Because of the conflicting evidence on the point in question and because of the catastrophic results that could flow from a decision in favor of the plaintiff if that decision turned out to have been incorrect, this court is compelled to find that the Age Discrimination in Employment Act did not mean to force employers to be any more

than "reasonable" in their decisions in this area.[3]

One must remember that the case before this court presents a situation where the safety factor (that is the relation of the decision under scrutiny to the safety of third parties) is enormous; many lives are at stake. In a situation where no safety factor is present, the court must focus in on the rights of the employees not to be discriminated against except where such discrimination is "reasonably necessary." In those situations, an employer should not be permitted to justify a bfoq on the showing that its position is "reasonable" under the second level of the test; the employer must be *right* in the eyes of the finder of fact. This distinction gives as much protection to employees as can be given without unfairly jeopardizing innocent third parties.

This distinction takes care of the case at bar, but it is far from the final word in this area. The safety factor present in this situation is very large, and the only comparison that has been made is with those situations where there is no safety factor at all. Surely there will be cases where a safety factor is presented but where the risks involved are not nearly as great as they are in this case. This court is not called upon to determine what test will be used in such cases, but it is clear that some middle ground should be reached.

Every court which has dealt with the issue of safety as it comes up in employment discrimination cases has noted that an employer must be given more leeway in cases where a safety factor is present. *Tamiami, supra; Hodgson, supra; Arritt v.*

*Grisell*, 567 F.2d 1267 (4th Cir. 1977); *Aaron v. Davis*, 414 F.Supp. 453 (E.D.Ark.1976). See also, *Note, The Age Discrimination in Employment Act of 1967*, 90 Harvard L.Rev. 380, 407 (1976). Necessarily, determination as to the proper amount of leeway to be given will be made on a case to case basis and will depend upon the specific facts presented.

## II.  APPLICATION TO THE FACTS

Now that the test to be used has been defined, the court must turn to the facts and apply the relevant test to them.

There is no dispute about the defendant's satisfaction of the first level of the test. Everyone agrees that safety is important enough to the business of the defendant that it is an appropriate basis for discrimination if the discrimination is shown in the second level of the test to be justified.

On the second level, defendant makes no suggestion that it can satisfy the first alternative; it agrees that not every person over the age of sixty will suffer a sudden disabling injury while flying a plane. It rests its argument on the part of the test that permits a bfoq where "it is impossible or impractical to deal with" the potential employees on an individual basis.

■ Defendant points to the regulation promulgated by the FAA that prohibits pilots over the age of 60 from flying commercial air liners. It asserts that since the FAA has determined that this rule is necessary to the proper administration of aviation, the theory behind the rule must be found to be "reasonable." It further asserts that this theory is identical to that

---

**3.** If, in a situation where reasonable people could differ, the establishment of a bfoq were left to the finder of fact (who would determine which side was "right."), an intolerable situation could occur. An employee of company A might win his case, while a similarly situated employee of company B, unable to use *res judicata* to his benefit, might lose. If A and B were competing companies, they would be subject to different rules as a result of the two lawsuits.

In addition to this possibility, in situations, such as the one presented by the case at bar, in which the question was whether or not society

had yet reached sufficient competence in a certain area, a single employer could face the same questions week after week in suits brought by a single employee. Every time a new article is written or another expert indicates his opinion, a previously unsuccessful discriminatee could come into court and claim that developments in the relevant field of expertise have changed the situation and that, therefore, an entirely new question is presented for determination. Even if the courts could successfully deflect repeated suits by the same people, how could they avoid additional suits by similarly situated but different people?

which supports defendant's employment rule and that, therefore, the reasonableness of the theory mandates a finding by the court that the defendant's employment rule is justified under 29 U.S.C. 623(f)(1). The court agrees.

Plaintiff correctly points out that the FAA has the apparent power to promulgate a regulation which would cover pilots of corporate transportation departments and that it has not chosen to do so. He asserts that in the absence of such a regulation, the court should not assume that the FAA believes that persons over 60 are not safe to pilot such planes. Plaintiff's argument is that perhaps the FAA feels that the added strain of flying commercial air lines is such that the safety factor takes over. If this were the thinking of the FAA, the application of its "over" 60 rule to the plaintiff would be unjustified.

However, the court finds no merit in this argument. Perhaps the FAA intended to permit companies with internal air transportation systems to decide for themselves whether or not to permit pilots to fly past the age of 60. At a time when regulators are unhaltingly assailed for overregulating, the FAA appears to have carefully drawn the outside limits of its regulations so that companies like the defendant in this case would be free to either accept or reject the medical evidence that says that pilots over the age of 60 may be dangerous.

If defendant were not permitted to disqualify pilots who reach the age of 60, it would be forced into a nearly impossible situation. On the one hand, it would be afraid to fire such pilots for fear of lawsuits by the pilots themselves. On the other hand, however, it would be afraid to keep these pilots in the air for fear that they might have accidents which might injure or kill third parties, who, with the FAA regulation in hand, would sue the defendant for failing to realize the dangers of permitting pilots over the age of 60 to fly.

Given the conflicting views of the doctors and the FAA regulation, this court has no choice but to find that the defendant's employment rule is a reasonable one and, therefore, that age is a bfoq for pilots such as plaintiff.

## CONCLUSION

The court's conclusion is that in this case where the bfoq involves the important safety interests of third persons, a jury should not be permitted to speculate on the sufficiency of the medical evidence as to the reasonable necessity of the defendant's employment rule. Separate juries might reach different conclusions. Third persons, not being parties, might not have their interests protected. It is a full and complete defense to a claim of age discrimination that an appropriate federal agency has determined after a full hearing that, as to persons over the age of 60, it is not possible to use factors other than age to predict the likelihood of the onset of a sudden condition that could imperil the passengers. In such a case an employment rule based on this determination would be reasonable and thus age would be a bona fide occupational qualification.

The FAA has made such a determination for commercial air line pilots. The defendant uses its fleet of planes and its personnel in much the same way as do the commercial air lines. They carry passengers. The pilots are employed and paid to fly passengers. Persons who ride in these planes are entitled to the same protection as are those on the commercial air lines. The defendant is not to be second guessed by a judge or jury for establishing a rule consistent with the safety rules mandated by the FAA for commercial air lines in the employment terms of its pilots.

For these reasons, defendant's motion for summary judgment is granted as to both Count I (brought under federal law) and Count II (brought under state law.)

So ordered.