EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff–Appellee,

v.

CITY OF JANESVILLE, Defendant–Appellant.

No. 79–2523.

United States Court of Appeals, Seventh Circuit.

Argued June 10, 1980.

Decided Sept. 23, 1980.

Rehearing and Rehearing En Banc Denied Dec. 10, 1980.

David Uelmen, Milwaukee, Wis., for defendant–appellant.

Justine Lisser, E.E.O.C., Washington, D.C., for plaintiff–appellee.

Before CUMMINGS and BAUER, Circuit Judges, and CROWLEY, District Judge.*

* The Honorable John Powers Crowley, Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

BAUER, Circuit Judge.

This is an appeal by the City of Janesville, Wisconsin from a preliminary injunction entered by the district court, 480 F.Supp. 1375, which requires the City to reinstate Kenneth Jones to his position as Chief of Police pending a decision on the merits of his claim, presented here by the Equal Employment Opportunity Commission (EEOC), that the City's policy of mandatory retirement for all "protective service" employees at the age of fifty–five violates the Age Discrimination in Employment Act (ADEA), *as amended*, 29 U.S.C. § 621 *et seq.* Our jurisdiction is founded on 28 U.S.C. § 1292. The City raises three issues for review on appeal: (1) whether the ADEA, as made applicable to the states and their political subdivisions under the 1974 amendments, constitutes an impermissible intrusion into the affairs of the City of Janesville in derogation of the Tenth Amendment; (2) whether the City of Janesville is exempt from the coverage of the ADEA by the establishment of a bona fide occupational qualification for the position of Chief of Police as permitted by section 4(f) of the ADEA, 29 U.S.C. § 623(f); and (3) whether, under the circumstances in this case, the district court abused its discretion in granting interlocutory injunctive relief requiring the City to reinstate Jones to his position as Chief of Police. We hold that the issuance of a preliminary injunction was an improvident exercise of judicial discretion and accordingly reverse the order appealed from for the reasons set forth below.

I

The facts material to the disposition of this appeal are not in dispute. Kenneth Jones commenced his employment as police officer with the City of Janesville on October 24, 1948 and was appointed Chief of Police effective January 2, 1975. He served continuously in that position until his dis-

charge on June 30, 1979, nine days after he reached the age of fifty–five.

Jones was discharged pursuant to the City's policy to compulsorily retire all employees in protective service occupations at the end of the calendar quarter in which they reach age fifty–five. The City permits one year extensions where compulsory retirement would create a hardship for an employee that could be alleviated within one year or where a one year extension would help resolve management problems for the City. *See* Administrative Policy Statement of February 24, 1977 (App. at 2). The City fashioned its retirement policy under the terms of the Wisconsin Retirement Fund (WRF) which, pursuant to state statute, sets age fifty–five as the normal retirement age for all "protective service officers" who participate in the WRF, regardless of the actual job performed. Wis. Stats., ch. 41.02(11)(a)–(bb). As a participant in the WRF, the City pays the total cost of the retirement program for its police personnel and its contribution in this case amounts to approximately twenty–five percent of Jones's annual salary. Prior to his scheduled retirement, Jones sought an indefinite extension of his retirement date, but his request was denied by the City's Board of Police & Fire Commissioners. Jones was retired on June 30, 1979 and full retirement benefits were paid by the WRF. The City then conducted a nationwide search to fill the vacancy created by Jones's retirement and selected an applicant from Saginaw, Michigan as his replacement.

Jones challenged his discharge in a suit brought under the ADEA, the Civil Rights Act, and the Fifth and Fourteenth Amendments. The EEOC then filed suit against the City to enforce Jones's rights under the ADEA.[1] On October 19, 1979 the district court entered a temporary restraining order barring the appointment of Jones's succes-

---

1. Section 7(c)(1) of the ADEA provides:

   Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this Act: *Provided,* That the right of any person to bring such action shall terminate upon the commence-

   ment of an action by the Secretary to enforce the right of such employee under this Act. 29 U.S.C. § 626(c)(1). Pursuant to the President's Reorganization Plan No. 1 of 1978, responsibility for enforcement of the ADEA was transferred from the Department of Labor to the EEOC. 43 F.R. 19807.

sor, who had been employed as acting Chief of Police, in order to preserve complete relief should Jones prevail. On December 13, 1979, the district court entered a preliminary injunction mandating Jones's reinstatement pending a full determination on the merits of his complaint.

The district court found that the EEOC had made out a prima facie case of discrimination under the ADEA since the sole basis for the City's decision to retire Jones was the fact that he had reached the mandatory retirement age. The court issued the preliminary injunction because it concluded that the EEOC had a reasonable likelihood of prevailing on the merits. In so ruling, the court stated that the issue was whether the City could show that age less than fifty–five is a bona fide occupational qualification (BFOQ) for the performance of Jones's duties as *police chief*, rather than for the performance of other, more typical, police duties, such as those of a patrolman. In finding that it was reasonably likely that the City could not establish a BFOQ for the position of police chief, the court rejected the City's argument that its mandatory retirement policy was based on what it regarded as the state legislature's judgment embodied in the WRF that the compulsory retirement of protective service employees at age fifty–five, regardless of position, is in the best interest of all public safety personnel and the people they are required to serve throughout the state.

The City subsequently moved for reconsideration and a stay of the preliminary injunction order, and in reliance on *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), asserted that the ADEA is unconstitutional as applied to local governments under the Tenth Amendment. The district court denied the motion on December 20, 1979. The court found *National League of Cities* to be inapposite and held that:

Particularly as to legislation directed to age discrimination in employment, as distinguished from legislation compelling municipalities to pay certain minimum wages and to observe certain maximum hours for all employees, the presumption of constitutionality is sufficiently strong to support interlocutory injunctive relief.

From the order of the district court granting the preliminary injunction, the City of Janesville has appealed to this Court.[2]

## II

Appellate review of a preliminary injunction order is limited to the determination of whether the district court abused its discretion in deciding that the circumstances of the case justified injunctive relief. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931–932, 95 S.Ct. 2561, 2567–2568, 45 L.Ed.2d 648 (1975); *Kolz v. Board of Ed. of City of Chicago*, 576 F.2d 747, 748 (7th Cir. 1978). We conclude that the circumstances in this case did not warrant injunctive relief and accordingly hold that the entry of the preliminary injunction constituted an abuse of judicial discretion.

The standard for granting a preliminary injunction requires the plaintiff to show that he is likely to prevail on the merits and that in the absence of its issuance he will suffer irreparable injury. *Doran, supra*, 422 U.S. at 931, 95 S.Ct. at 2567. In this case, the district court found that the EEOC had established a prima facie case of age discrimination under the ADEA since Jones had been discharged from employment solely on the basis of his age, in violation of Section 623(a) of the Act.[3] Although the court conceded that it is relatively simple for the plaintiff to make a prima facie showing of discrimination, it noted that the plaintiff's likelihood of ultimate success depended on whether the City could avail itself of the exemption provided

---

2. On December 21, 1979, this Court denied a motion for stay pending appeal filed by the City.

3. This section provides, in relevant part:
   (a) It shall be unlawful for an employer—
   (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate

against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . .
29 U.S.C. § 623(a)(1).

**1258**

in Section 623(f) of the ADEA permitting age–based discriminatory discharges where "age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business." 29 U.S.C. § 623(f)(1). The court concluded that the plaintiff had a reasonable likelihood of sustaining its prima facie case in a trial on the merits because the City had failed to show by its evidence a BFOQ for the position of police chief. It is this conclusion with which we take exception.

It is true, as the district court properly observed, that an exemption to a remedial statute must be narrowly construed, but in our judgment, especially in the context of a preliminary injunction proceeding, the district court's construction of the exemption provided in Section 623(f)(1) of the ADEA is excessively narrow. In construing the statutory language "bona fide occupational qualification reasonably necessary to the normal operation of a particular business," the court ascribed to the term "particular business" a meaning synonymous with the term "particular occupation," namely, the position of police chief. Although our examination of the legislative history of the ADEA yields no support for such a construction, we find resort to the legislative history unnecessary since the plain meaning of the term "particular business" is not susceptible to interpretation. That a particular occupation may by definition be encompassed within the meaning of the term "particular business" is irrelevant; the Congress was certainly at liberty to limit the applicability of a BFOQ to a particular "occupation" rather than to a "business" if it so intended. Nor do we find reliance on our decision in *Hodgson v. Greyhound Lines, Inc.,* 499 F.2d 859 (7th Cir. 1974), to be dispositive because in that case a BFOQ was asserted to justify the mandatory age–based retirement of a generic class of employees.

In this case, the City had the burden of establishing that its mandatory retirement program, as applied to the generic class of law enforcement personnel employed by the City to operate the "business" of its police department, falls within the terms of the BFOQ exemption provided under the ADEA. In attempting to meet this burden, the City conceded that it had not undertaken any empirical studies to show the relationship between age and the ability to perform a protective service function. Rather, in devising its retirement policy, the City relied on the Wisconsin Public Employees Retirement Act, which provides for a retirement fund for municipal employees and which permits the forced retirement of "protective service" employees at the age of fifty–five. Wis.Stats., ch. 41 *et seq.* The definition of "protective service" employees in the statute is deemed to include "policemen, including the chief and all other officers," who are participants in the Wisconsin Retirement Fund. Wis.Stats., ch. 41.-02(11)(a). The City regards this statute as a state legislative judgment, endorsed by the Janesville Common Council and its Board of Police & Fire Commissioners, that the mandatory retirement age for protective service jobs is in the best interest of all public safety personnel and the people they are required to serve throughout the state. In support of this position, the City submitted seven reports prepared by the Wisconsin Retirement Research Committee containing evidence that the mandatory retirement age is an expression of the Wisconsin legislature's judgment that being younger than age fifty–five is a BFOQ for the generic class of protective service occupations.

The district court discounted the validity of this evidence because it failed to present an empirical analysis of the relationship between the mandatory retirement age and the performance of a particular protective service *position,* such as Chief of Police. However, for the reasons discussed above, this failure cannot be regarded as dispositive of the City's ability to establish a BFOQ for the generic *class* of employees subject to its retirement program. Indeed, the district court found that the documentary evidence submitted by the City demonstrated that the state legislature was not deliberately discriminating against older workers in enacting its mandatory retirement program, but was acting on a good faith belief that the public safety required early retirement of all protective service

employees. That the wisdom of a legislative act is not subject to judicial scrutiny requires no citation. Thus, but for the failure of the City's evidence to address a BFOQ for the position of police chief, which we have determined was not required, the district court was apparently willing to accept the statutory presumption that age is a BFOQ for the class of protective service occupations covered under the Wisconsin Public Employees Retirement Act. Since the City relied on that legislative judgment in enacting its retirement program, it is not clear to us that the City is unlikely to succeed in showing that age is a BFOQ under its program, or conversely, that the plaintiff has a reasonable likelihood of sustaining its prima facie case after a full trial on the merits of the City's BFOQ defense.

### III

■ Nor do we agree that the plaintiff has made the requisite showing of irreparable injury to justify injunctive relief in this case. The purpose of a preliminary injunction is to preserve the object of controversy in its then existing condition, *i.e.*, to preserve the status quo. *Missouri–Kansas–Texas R. Co. v. Brotherhood of Ry. & S.S. Clerks*, 188 F.2d 302, 306 (7th Cir. 1951). In the case at bar, Jones was retired as Chief of Police effective July 1, 1979, and was receiving retirement benefits until reinstated to his position pursuant to court order on December 13, 1979. The reinstatement of Jones did not, of course, preserve the status quo as it existed on December 13 and, as the City asserts, had a deleterious effect on the operation of the police department because the City was compelled to demote Jones's replacement to an assistant's position which, among other uncertainties, created a conflict in authority, and because the City was compelled to pay an additional, unanticipated salary and pension expense, the duration of which is subject only to the caprice of Jones.

The district court characterized these alleged hardships as having been created by the City due to its decision to compel Jones to retire, and in balancing the equities concluded that the failure to reinstate Jones to his former position during the pendency of the litigation would result in the deterioration of his skill and morale during that period which could not be cured by a final judgment ultimately reinstating him to his job with back pay. We find no basis in the record for such a conclusion. Reinstatement pending a trial on the merits, even in cases of race or sex discrimination, is an extraordinary remedy permissible only upon a substantial showing of irreparable injury. *Ekanem v. Health & Hospital Corp.*, 589 F.2d 316, 322 (7th Cir. 1978) (per curiam). Moreover, irreparable injury does not include loss of income, inability to find other employment, or financial distress. *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). In the absence of a showing that Jones will suffer "the deterioration of his skill and morale during the pendency of this action," we conclude that the extraordinary remedy of reinstatement is inappropriate.

### IV

■ Finally, we note that although the City and *amicus* in this case have advanced considerable arguments in support of the contention that the ADEA is constitutionally infirm as applied to the states, we believe this issue to be one more properly addressed in the first instance to the district court on the trial of this action. We do not, however, intimate any view concerning the merits of this question nor do we express any views on the merits of the substantive claims asserted by the respective parties to this litigation. For the foregoing reasons, the order of the district court appealed from is reversed, the preliminary injunction is dissolved, and the cause is remanded to the district court for further proceedings not inconsistent herewith. The Clerk of this Court is directed to enter judgment accordingly.

REVERSED AND REMANDED.