U. S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellee,

v.

CITY OF ST. PAUL, Appellee,

James Fee (Intervenor below), Appellant.

No. 81–1037.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1981.

Decided March 2, 1982.

Jan Stuurmans, argued, Stuurmans & Kelly, P. A., Minneapolis, Minn., for James Fee.

Edward P. Starr, City Atty., Terry Sullivan, Asst. City Atty., St. Paul, Minn., for City of St. Paul.

Leroy D. Clark, Gen. Counsel, Philip B. Sklover, Acting Associate Gen. Counsel, Vella M. Fink, Asst. Gen. Counsel, Allyson K. Duncan, argued, Equal Employment Opportunity Commission, Washington, D. C., for appellee.

Before BRIGHT and ROSS, Circuit Judges, and GIBSON, Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

This is an appeal from that part of the judgment of the district court [1] holding that

1. The Honorable Donald D. Alsop, United States District Judge, District of Minnesota.

the application of the City of St. Paul's mandatory retirement age of 65 for district fire chiefs violates the Age Discrimination in Employment Act (ADEA). 29 U.S.C. §§ 621–634 (1976 and Supp. II 1978).

### I. Facts

The ADEA was enacted in 1967 and prohibited age discrimination against persons aged 40 through 64. Pub.L.No.90–202, §§ 4, 12, 81 Stat. 602, 603, 607. It was amended in 1974 to apply to state and local governments. Pub.L.No.93–259, § 28(a)(2), 88 Stat. 55, 74 (codified at 29 U.S.C. § 630(b) (1976)), and was again amended in 1978 to extend coverage to persons through age 69. Pub.L.No.95–256, § 3(a), 92 Stat. 189 (codified at 29 U.S.C. § 631 (Supp. II 1978)). The ADEA permits otherwise unlawful age discrimination "where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business." 29 U.S.C. § 623(f)(1) (1976).

Minnesota law provides for retirement at age 65 for persons on the fire department payroll. Minn.Stat.Ann. § 423.075, subd. 1 (West Supp.1981). St. Paul enacted Ordinance No. 16591 on October 18, 1979, which establishes a mandatory retirement age of 65 for uniformed fire employees. It was to take effect on December 26, 1979. The United States Equal Employment Opportunity Commission brought an action on December 18, 1979, on behalf of the charging party, District Fire Chief George Schmidt, and sought an order restraining the City from enforcing the ordinance. Such an order was issued on the effective date of the ordinance, December 26, 1979. Local 21 of the Uniformed Fire Fighters of St. Paul and Captain James Fee, who was first on the list of those eligible for promotion to fire chief, intervened.

The trial was conducted May 19–22 and June 10–12, 1980. The district court ruled that age is a bona fide occupational qualification (BFOQ) for all positions in the uniformed division of the fire department except that of district fire chief. All parties agree that the job of the fire chief is substantially different from that of other firefighters. The chief is responsible for administration in his district and he supervises and coordinates activities at the scene of a fire. Other firefighters are directly responsible for the suppression of the fire. Occasionally, the chief performs the tasks usually performed by other firefighters. The court enjoined the City from enforcing the ordinance against chiefs, but it did not enjoin the State because there was no evidence that the State intended to enforce the statute. Captain Fee appealed from the determination that age is not a BFOQ for chiefs. The City did not appeal and is therefore an appellee, but it, too, in a brief it filed, argues that age is a BFOQ for chiefs.[2] The EEOC voluntarily dismissed a cross-appeal relating to all uniformed personnel except district fire chiefs. We now affirm the judgment of the district court.

### II. Age as a BFOQ for Fire Chiefs

The City makes two arguments[3] in advocating reversal. First, the City argues that the district court should have considered whether age is a BFOQ for firefighting personnel in general, rather than considering chiefs separately. Second, the City argues that the evidence does not support the district court's conclusion that age is not a BFOQ for district fire chiefs. The EEOC originally argued that age was not a BFOQ for firefighting personnel, and on appeal is now contending that age is not a BFOQ for district fire chiefs.

2. For purposes of brevity, the arguments put forth by both the City of St. Paul and Captain Fee will be referred to as arguments of "the City."

3. None of the parties have raised the issue of whether the application of the ADEA to state and local governments violates the tenth amendment, and therefore we express no view on that issue. The United States Supreme Court has noted probable jurisdiction in a case which held that the tenth amendment prohibits application of the ADEA to state and local governments. *EEOC v. Wyoming*, 514 F.Supp. 595 (D.Wyo.1981), *prob. juris. noted*, —— U.S. ——, 102 S.Ct. 996, 71 L.Ed.2d 297 (1982). At least one court has agreed that the ADEA is unconstitutional as applied to states. *Taylor v. Department of Fish and Game*, 523 F.Supp. 514 (D.Mont.1981).

## A. Relevant Class for Determining Age as a BFOQ.

The City argues that the district court should have limited its inquiry to whether age is a BFOQ for all firefighting personnel. The ordinance at issue requires retirement at age 65 for "all uniformed fire employees." According to the City, the district court should not have given separate consideration to the subclass of fire chiefs.

The City relies on a Seventh Circuit case, *EEOC v. City of Janesville*, 630 F.2d 1254 (7th Cir. 1980). There the court held that a district court should have looked at whether age is a BFOQ in the particular business, rather than the particular occupation. Specifically, the court remanded a case in which the district court considered whether age was a BFOQ for police chiefs, and held that it was. The Seventh Circuit said the inquiry should have been limited to whether age is a BFOQ for "the generic class of law enforcement personnel employed by the City to operate the 'business' of its police department," *id.* at 1258, rather than the position of police chief.

The Seventh Circuit felt this approach was required by the ADEA. Section 623(f)(1) allows age discrimination where "age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business." The court felt the words "particular business" precluded consideration of an occupation like police chief. The court said it found nothing in the legislative history that would allow a court to consider just the occupation. However, the court did not cite any legislative history, apparently because it felt the plain meaning of the term "particular business" precluded consideration of a particular occupation or an individual officer in an ongoing business operation. *Id.*

After reviewing *Janesville*, the ADEA, and the legislative history, we choose not to follow the Seventh Circuit opinion.[4] First, we disagree with the idea that the phrase "bona fide *occupational* qualification rea-

sonably necessary to the normal operation of the particular business" precludes consideration of a particular occupation within that particular business. It seems to us that the plain meaning of the phrase is that age can be considered relevant in an occupation within the particular business. The different readings of the plain meaning of the phrase by this court and the Seventh Circuit make inquiry into the legislative intent appropriate. *See Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917); *United States v. American Trucking Association*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940).

The legislative history shows a congressional intent to require employment decisions to be made on the basis of ability rather than age. The ADEA includes a section with congressional findings and a statement of purpose. The stated purpose of the statute is "to promote employment of older persons based on their ability rather than age." 29 U.S.C. § 621(b) (1976). Likewise, the House Report states: "It is the purpose of H.R.13054 to promote the employment of older workers based on their ability." H.R.Rep.No.805, 90th Cong., 1st Sess., *reprinted in* 1967 U.S.Code Cong. & Ad.News 2213, 2214. *See also* S.Rep.No. 723, 90th Cong., 1st Sess. 1 (1967).

The Seventh Circuit's interpretation of the Act would not require that employment decisions be based on ability rather than age if the generic class as a whole would fall in the category of which age is a BFOQ. It would be inconsistent with the goal of ability-based decisions to allow a city to retire a fire chief or a police chief who was completely able to fulfill his duties because he was unable to fulfill the duties of another position within the department, such as fire captain or patrolman. Furthermore, it is not clear to us how a "generic class" of employees would be determined. If the class would be determined by state law, the Act could be completely subverted. State law could create a class of "all state

---

4. *Janesville* might be distinguished on the basis that it reversed a preliminary injunction which required reinstatement of a retired police chief. However, our examination of the opinion does not show us how the fact that the appeal was from an injunction would affect the Seventh Circuit's analysis of the Act.

employees" and thereby allow the state to retire a clerk because he or she is too old to fight fires.[5] If the district court is to make the determination itself, we believe it should make the determination most relevant to the parties before it.[6] We cannot believe that the ADEA was intended to allow a city to retire a police dispatcher because that person is too old to serve on a SWAT team. We believe the district court was correct in giving separate consideration to the different occupations within the fire department instead of confining its inquiry to a generic class as a whole.

### B. Age as a BFOQ for Fire Chiefs.

#### 1. The Law of the Case.

██ The next inquiry is whether the district court erred in deciding that age is not a BFOQ for fire chiefs. Our review is limited to determining whether the district court's findings of fact were correctly applied to the law, and whether those findings are clearly erroneous. Fed.R.Civ.P. 52(a); *Horner v. Mary Institute*, 613 F.2d 706, 713 (8th Cir. 1980).

██ This court has held that an employer's decision to retire employees solely on the basis of age is a *per se* violation of the ADEA. *Houghton v. McDonnell Douglas Corp.*, 553 F.2d 561, 564 (8th Cir.), *cert. denied*, 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 451 (1977). The employer has the burden of proving that its actions were within the scope of the BFOQ exemption. *Id.* This burden requires the employer to show that either it has a factual basis for believing that substantially all of the older employees are unable to perform their duties safely and efficiently or that some older employees possess traits precluding safe and efficient job performance unascertainable other than through knowledge of the employee's age. *Id.; Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224, 234–36 (5th Cir. 1976).[7]

In the instant case, the City has not argued on appeal that all or substantially all chiefs are incapable of performing their duties safely and efficiently. Rather, it argues that traits which preclude safe and efficient job performance are unascertainable other than through knowledge of the employee's age, and that age in general is a debilitating factor in a person's physical and mental capabilities.

---

**5.** Even following the language of the statute can be inconclusive. In the instant case, state law provides for retirement at age 65 for "every employee, officer, or person on the payroll of any police or fire department." Minn.Stat. Ann. § 423.075, subd. 1 (West Supp.1981). St. Paul's ordinance is limited to "uniformed" fire department employees. Ordinance 16591 (Oct. 18, 1979).

**6.** The *Janesville* court did not make clear how the class should be defined. At one point the court said the City had the "burden of establishing that its mandatory retirement program, as applied to the generic class of law enforcement personnel employed by the City to operate the 'business' of its police department, falls within the terms of the BFOQ exemption." 630 F.2d at 1258. Later the court stated that the district court should have been willing "to accept the statutory presumption that age is a BFOQ for the *class of protected service occupations* [which included firefighters and policemen] covered under the Wisconsin Public Employees Retirement Act." *Id.* at 1259 (emphasis added).

**7.** The Seventh Circuit has used a different approach. In *Hodgson v. Greyhound Lines, Inc.*, 499 F.2d 859 (7th Cir. 1974), *cert. denied*, 419

U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 822 (1975), the court allowed the employer to meet its burden by showing that it had a rational basis in fact to believe that elimination of a maximum hiring age would increase the likelihood of risk of harm to its customers. *Id.* at 863. Apparently the court would allow an employer to retire an employee even though the employee's fitness is ascertainable by means other than knowledge of the employee's age. The Seventh Circuit discussed two Fifth Circuit cases in reaching its decision: *Weeks v. Southern Bell Telephone & Telegraph Co.*, 408 F.2d 228 (5th Cir. 1969), and *Diaz v. Pan American World Airways, Inc.*, 442 F.2d 385 (5th Cir.), *cert. denied*, 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971). The Fifth Circuit, in concluding that age can be relied on only when there is no other practical way of separating the qualified and unqualified employees, stated that the Seventh Circuit misread the Fifth Circuit cases. *Tamiami*, 531 F.2d at 235 n.27. Therefore, we would give more weight to the Fifth Circuit's interpretation, even if *McDonnell Douglas* were not controlling precedent in this circuit.

■ The district court expressly found that tests can determine with great accuracy an individual's ability to perform the tasks required of a chief. *EEOC v. City of St. Paul*, 500 F.Supp. 1135, 1142–43 (Findings of Fact Nos. 42, 44, 52), 1145 (D.Minn. 1980), and that age is a less accurate predictor of heart attacks than medical tests. *Id.* at 1146. Assuming the accuracy of these findings, the district court was correct in concluding that age discrimination was not "reasonably necessary to the normal operation" of the business of firefighting as respects district fire chiefs, and therefore age would not be a BFOQ. Although not at issue since the EEOC dismissed its cross-appeal, the district court's finding that age is a BFOQ for firefighters, fire equipment operators, and fire captains is amply supported by the record.

■ The only other question of law is whether the district court erred in not deferring to an implied legislative determination that age is a BFOQ for chiefs. In *Janesville*, the Seventh Circuit held that a city's determination that age is a BFOQ is entitled to a statutory presumption of correctness. 630 F.2d at 1259. Nevertheless, we believe that in situations where age could be a BFOQ, Congress did not intend that mandatory retirement statutes be presumed valid. Rather, a case should be made when establishing that age is a BFOQ instead of relying on a legislative fiat. This is not to say that a legislative declaration is not entitled to considerable deference.

Application of the statutory presumption of correctness of legislative determinations would effectively give the employee the burden of showing that the BFOQ exemption does not apply. The general rule in this circuit is that the employer has the burden of proving the BFOQ exemption applies. *McDonnell Douglas*, 553 F.2d at 564. *See also*, 29 C.F.R. § 860.102(b) (1981). Application of the statutory presumption of correctness would put state and local governments in a much better position under the ADEA than private employers. The original ADEA, enacted in 1967, did not include state and local governments within its coverage. The 1974 amendments brought state and local governments under the Act. The legislative history does not address the presumption of correctness that courts normally give statutes. However, the legislative history indicates that governmental employees would have the same protection under the Act as employees of private businesses. The House Report states: "The committee expects that expanded coverage under the Age Discrimination in Employment law will remove discriminatory barriers against employment of older workers in government jobs at the Federal and local government levels as it has and continues to do in private employment." H.R. Rep.No.913, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 2811, 2850. Also, during the debate on the Senate floor on the Fair Labor Standards Amendments of 1974, Senator Lloyd M. Bentsen made one of the few references to the provision in those amendments which extended the ADEA to public employees. He said: "The passage of this measure insures that Government employees will be subject to the same protections against arbitrary employment based on age as are employees in the private sector. I am pleased that this long struggle is now ending, and that this provision will be written into law." 120 Cong.Rec. 8768 (1974). Furthermore, cases which have discussed the BFOQ exemption in the area of sex discrimination, 42 U.S.C. § 2000e–2(e) (1976), have not suggested that governmental employers should be treated differently from private employers. *See Dothard v. Rawlinson*, 433 U.S. 321, 333, 97 S.Ct. 2720, 2728, 53 L.Ed.2d 786 (1977); *id.* at 339, 97 S.Ct. at 2731 (Rehnquist, J., concurring); *Gunther v. Iowa State Men's Reformatory*, 612 F.2d 1079, 1086 (8th Cir.), *cert. denied*, 446 U.S. 966, 100 S.Ct. 2942, 64 L.Ed.2d 825 (1980). The rationale has been that the BFOQ exemption "was in fact meant to be an extremely narrow exception." *Rawlinson*, 433 U.S. at 334, 97 S.Ct. at 2729 (sex); *see* 29 C.F.R. § 860.102(b) (1981) (age).

On the other hand, one court has granted deference to an administrative determination. In *Tuohy v. Ford Motor Co.*, 490 F.Supp. 258 (E.D.Mich.1980), the court held that the Federal Aviation Administration regulation prohibiting the use of pilots over

the age of 60 for commercial airlines conclusively established age as a BFOQ. *Id.* at 264. The court recognized that this conclusion was inconsistent with *Tamiami*. *Id.* at 262. The *Tuohy* court felt that the employer had to show only that it had a *reasonable basis* for believing that fitness is unascertainable by factors other than age, while *Tamiami* and *McDonnell Douglas* require the employer to *prove* that fitness is otherwise unascertainable. 553 F.2d at 564.[8] The *Tuohy* court decided that the FAA regulation conclusively established that the belief that fitness is otherwise unascertainable is reasonable, considering the public interest involved in the issue of safety of third persons. *McDonnell Douglas*'s adoption of the *Tamiami* approach is controlling in this jurisdiction, so the *Tuohy* rationale is not available to this court.

The only other question is whether the district court's findings are supported by the evidence. The City argues that there is no rational basis for distinguishing between chiefs and other firefighting personnel. This assertion is incorrect. Although chiefs are called upon to perform the duties of other firefighters, the chiefs engage in such duties for relatively short periods of time. For instance, a chief may perform rescue work before other firefighting personnel arrive at the scene. Trial Transcript, Vol. I at 68, 140–41, Vol. II at 61–62. The district court found that it is the endurance that cannot be ascertained by individual testing. 500 F.Supp. at 1141–42 (Findings of Fact Nos. 42, 44), 1146 n.5. There was evidence to support the conclusion that age is not a BFOQ for chiefs. Trial Transcript, Vol. IV at 66–70, 72–73. The City did show the general debilitating effects of age, although recognizing many exceptions and inequalities of application. 500 F.Supp. at 1140–41 (Findings of Fact Nos. 31–40). Such evidence is not sufficient to show that age is a BFOQ. *McDonnell Douglas*, 553 F.2d at 564. *See also Aaron v. Davis*, 414 F.Supp. 453, 462–63 (E.D.Ark. 1976).

In conclusion, the district court's determination that fitness for the duties of district fire chief can be ascertained more reliably by means other than age is not clearly erroneous. Such a finding means that age cannot be said to be a "bona fide occupational qualification reasonably necessary to the normal operation" of the fire department as respecting district fire chiefs. We note, however, that our decision does not prohibit consideration of age in determining fitness for duty. It merely prohibits making age the only factor. Accordingly, the judgment of the district court is affirmed.

---

8. *Tamiami* and *McDonnell Douglas* require an employer using the "substantially all are unfit" defense to merely show a factual basis for that belief. 553 F.2d at 564.