**Jerome R. TUOHY, Plaintiff-Appellant,**

v.

**FORD MOTOR COMPANY, Defendant-Appellee.**

No. 80–1572.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 8, 1982.

Decided April 23, 1982.

* The Honorable Potter Stewart, Associate Justice of the United States Supreme Court (Retired), sitting by designation.

Raymond C. Fay, Alan M. Serwer, Haley, Bader & Potts, Chicago, Ill., for plaintiff-appellant.

Kermit G. Bailer, Paula Winkler-Doman, Stephen Bolerjack, Dearborn, Mich., for defendant-appellee.

Before STEWART, Associate Justice (Retired) *, and LIVELY and MERRITT, Circuit Judges.

LIVELY, Circuit Judge.

This is an appeal from summary judgment for the employer in an action by a former employee claiming that he was terminated solely because of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (1976). In granting summary judgment the district court concluded that the employer had established age as a bona fide occupational qualification (BFOQ) as a matter of law. The opinion of the district court is reported as *Tuohy v. Ford Motor Co.*, 490 F.Supp. 258 (E.D.Mich.1980). An act otherwise unlawful under the Age Discrimination in

Employment Act (ADEA) results in no liability if the employer establishes that age is a BFOQ in light of the employer's particular business. See 29 U.S.C. § 623(f)(1). The employee has appealed, alleging that summary judgment was improperly granted because there were material issues of fact which remained unresolved.

## I.

Ford maintains a fleet of passenger aircraft ranging in capacity from 12 to 30 passengers. Tuohy was employed as a pilot in 1954, has been a pilot-in-command on his flights since 1964, and has trained other Ford pilots for several years. Though Tuohy possessed the necessary pilot license and medical certificate required by the Federal Aviation Administration (FAA) to operate any of Ford's planes, he was removed from flight status upon reaching the age of 60 on December 24, 1978. Since there was no other position available at the time, Tuohy was required to take mandatory retirement as of December 31, 1978.

Ford admits that Tuohy was retired solely because of his age pursuant to a written policy of the company in effect since 1969 to remove all pilots from flight status at age 60. This policy was based squarely on 14 C.F.R. § 121.383(c), a regulation known as the "Age 60 Rule" which establishes age 59 as the maximum for commercial airline pilots. It is agreed that Ford's air operations are not controlled by Part 121 of 14 C.F.R. and that the Age 60 Rule does not apply on its face to Ford. Nevertheless, Ford has adopted a majority of the safety regulations contained in 14 C.F.R. Part 121, and a Ford official testified that the Age 60 Rule was adopted because Ford did not have the medical expertise to determine whether an individual pilot will be subject to a disabling medical problem while in flight upon reaching the age of 60. Tuohy produced the affidavit of the director of

Aerospace Medicine at Wright State University of Medicine who stated that reliable and accurate medical procedures do exist for testing a pilot's physiological and psychological health independent of age. This witness also stated by affidavit that there was no factual basis for believing that substantially all pilots age 60 or older are unable to perform their duties safely and efficiently.

In granting Ford's motion for summary judgment the district court recognized the conflict in the evidence concerning the ability of medical science to make determinations concerning a particular pilot's state of health independent of age. However, the court concluded that this did not present a material issue of fact because Ford's adoption of the Age 60 Rule promulgated by the FAA was "reasonable and thus age would be a bona fide occupational qualification." 490 F.Supp. at 264. The district court concluded that where safety is a paramount factor, such as it is in the case of the employment of a pilot of passenger aircraft, the ADEA requires no more of an employer than that its rule be reasonable. The court found it immaterial that the FAA could have applied the Age 60 Rule to corporate as well as commercial pilots and had never done so and, further, that the FAA did not apply the Rule to its own pilot employees.

Tuohy argues on appeal, as he did in the district court, that a rule does not qualify as a BFOQ just because it is reasonable. The ADEA requires that it be "reasonably necessary." [1] Tuohy contends that the unresolved issue of fact in the present case was addressed directly to the BFOQ statutory requirement of necessity. Since the FAA has never determined that it is necessary for non-commercial pilots to retire at age 60, Ford must establish that necessity independently in order to maintain its BFOQ defense in the present case. Thus, Tuohy

---

1. 29 U.S.C. § 623

(f) It shall not be unlawful for an employer, employment agency, or labor organization—

(1) to take any action otherwise prohibited under subsections (a), (b), (c), or (e) of this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age. ...

argues that the district court erred in holding that there were no material issues of fact and that Ford had established its BFOQ defense as a matter of law.

## II.

Though the operative provisions of the ADEA and of Title VII of the Civil Rights Act of 1964 are virtually identical this court has determined that Title VII standards should not be applied automatically in ADEA cases. See *Laugesen v. Anaconda Co.*, 510 F.2d 307, 312 (6th Cir. 1975). This view is supported by the legislative history of the ADEA which suggests a case-by-case approach. See H.R.Rep.No.805, 90th Cong., 1st Sess., *reprinted at* [1967] U.S.Code Cong. & Ad.News 2213, 2219–20. See also Note, 90 Harv.L.Rev. 380, 382 (1976). Cases such as the present one point up the necessity for an individual approach to cases under the ADEA. When an employer seeks to justify denying employment on the basis of a BFOQ which relates to the safety of persons other than the one claiming discrimination, a particular inquiry into the effect of aging on the ability to perform safely is called for.

Several courts have dealt with BFOQ claims in ADEA cases where the safety factor was deemed paramount. The case most often cited is *Usery v. Tamiami Trail Tours*, 531 F.2d 224 (5th Cir. 1976). That case involved the policy of an inter-city bus company of not considering applicants for driver positions who were between the ages of 40 and 65. The district court held that the company had established a BFOQ by showing that it had a factual basis for believing its business operations would be undermined without such a rule and by demonstrating that it would be impracticable to deal with each applicant over the age of 40 on an individual basis by considering the applicant's particular functional capacity to perform the duties of a driver safely notwithstanding age. The district court concluded that the weight of the evidence supported the view that physical examinations and other testing methods are unreliable in detecting certain psychological

changes inherent in the aging process, making individual consideration of applicants over the age of 40 highly impractical. In affirming the district court the court of appeals referred to its earlier decisions in *Diaz v. Pan American World Airways, Inc.*, 442 F.2d 385 (5th Cir.), *cert. denied*, 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971), and *Weeks v. Southern Bell Telephone and Telegraph Company*, 408 F.2d 228 (5th Cir. 1969), two sex discrimination cases. The court of appeals combined tests found in its two earlier Title VII decisions, modified as required by the distinctiveness of the ADEA claim before it, and fashioned a test by which to judge BFOQ claims. From *Diaz* the court concluded that an employer seeking to establish a BFOQ defense must show that the essence of its business was involved in the challenged rule and from *Weeks* the court adopted the rule that an employer must show either that it had a reasonable cause for believing that all or substantially all of the members of the affected class would be unable to perform the job safely or efficiently, or that it would be impossible or highly impractical to deal with the class members on an individual basis. The application of this two-step rule to cases involving safety of third persons was stated as follows:

> It is in the *Diaz* element of the BFOQ defense that the third-party safety factor comes into play. *Diaz* mandates that the job qualifications which the employer invokes to justify his discrimination must be *reasonably necessary* to the essence of his business—here, the *safe* transportation of bus passengers from one point to another. The greater the safety factor, measured by the likelihood of harm and the probable severity of that harm in case of an accident, the more stringent may be the job qualifications designed to insure safe driving. Thus, it is the *Diaz* element rather than the *Weeks* element of the BFOQ defense which adjusts to the safety factor.

*Tamiami, supra,* 531 F.2d at 235–36 (emphasis in original). Other courts have specifically adopted the *Tamiami* test. See *Arritt v. Grisell*, 567 F.2d 1267, 1271 (4th Cir.

1977); *Harriss v. Pan American World Airways, Inc.,* 649 F.2d 670, 676 (9th Cir. 1980).

The district court in the present case discussed the *Tamiami* BFOQ test and concluded that it should be applied in modified form to the facts of this case:

> If the *Tamiami* test is followed as set out, the safety factor would play no part in the determination to be made regarding the medical evidence in this case. The court would treat this question as it would any other where experts testify on both sides, and it would permit the fact finder to make the ultimate decision.
>
> Because the *Tamiami* test does not fully and practically address all of the problems presented by this case, the court believes that the second level of the test must be refined. It must be made flexible enough to take into account things such as the public interest which is involved wherever the safety of third persons is potentially threatened.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> Because of the conflicting evidence on the point in question and because of the catastrophic results that could flow from a decision in favor of the plaintiff if that decision turned out to have been incorrect, this court is compelled to find that the Age Discrimination in Employment Act did not mean to force employers to be any more than "reasonable" in their decisions in this area.

490 F.Supp. at 262–63 (footnote omitted). The very dispute in the evidence which the plaintiff Tuohy relies on to demonstrate that summary judgment was improper led the district court to conclude that intolerable results would flow from submitting such issues to juries. To avoid the possibility of "catastrophic results" the district court concluded that the test of a BFOQ claim where safety is an "enormous" factor should be whether it is reasonable rather than whether it is based on a reasonable necessity. *Id.* The court went on to find that the existence of the Age 60 Rule based on a determination by the FAA in the field of commercial aviation rendered Ford's rule reasonable:

> It is a full and complete defense to a claim of age discrimination that an appropriate federal agency has determined after a full hearing that, as to persons over the age of 60, it is not possible to use factors other than age to predict the likelihood of the onset of a sudden condition that could imperil the passengers. In such a case an employment rule based on this determination would be reasonable and thus age would be a bona fide occupational qualification.

*Id.* at 264.

### III.

With full appreciation of the gravity of the safety considerations, we conclude that the district court erred in granting summary judgment. The plaintiff sought relief under a statute which makes his termination unlawful unless permitted by some exception included in the Act itself. In claiming a BFOQ Ford asserted an affirmative defense to plaintiff's claim of unlawful discrimination. The statutory defense upon which Ford relied requires by its very terms that an occupational qualification be not only bona fide, but also "reasonably necessary." We agree with the plaintiff that the disputed factual issue in the present case is a material one because it is concerned precisely with whether Ford's adopted age 60 rule is reasonably necessary. The Age 60 Rule which the FAA has never seen fit to apply to corporate pilots does not foreclose further inquiry.

The presence of an overriding safety factor might well lead a court to conclude as a matter of policy that the level of proof required to establish the reasonable necessity of a BFOQ is relatively low. *See E.E. O.C. v. County of Santa Barbara,* 666 F.2d 373, 377 (9th Cir. 1982); *cf. Hodgson v. Greyhound Lines,* 499 F.2d 859, 863 (7th Cir. 1974), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 822 (1975). However, this is quite different from dispensing with the requirement of necessity and holding that a BFOQ has been established as a matter of law because adoption of a rule based on age was reasonable. *See Harriss v. Pan Ameri-*

can *World Airways, Inc., supra*, 649 F.2d at 677.

The issue at trial will be whether safety considerations render an Age 60 Rule for Ford's pilots reasonably necessary. To establish this reasonable necessity Ford must present a factual basis for its determination that medical science cannot predict, on an individual basis, the likelihood that a pilot who has reached age 60 will become incapacitated during flight. The court must weigh Ford's evidence against that of Tuohy who asserts that medical science has the means of measuring physiological and psychological health independent of age, and that there is no factual basis for believing that all pilots age 60 and over are unable to perform their duties safely. The factual dispute is clearly drawn and it relates to a material issue. On the record before the district court Ford was not entitled to judgment as a matter of law. Thus summary judgment was improper.

The judgment of the district court is reversed, and the case is remanded for further proceedings.