486 F.2d 81
 The AETNA CASUALTY AND SURETY COMPANY, a corporation,
Plaintiff-Appellee,
v.
Clifford R. HUNT et al., Defendants-Appellees, and State
Farm Mutual Automobile Insurance Company,
Intervenor-Appellee, Wilford Lamar Teel
et al., Intervenors-Appellants.
 No. 73-1071.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted July 11, 1973.
Decided Oct. 24, 1973.
Rehearing Denied Nov. 16, 1973.
 
 Jefferson G. Greer, Tulsa, Okl., for intervenors-appellants.
 Dale F. McDaniel, Tulsa, Okl., for plaintiff-appellee.
 E. D. Hieronymus, Tulsa, Okl., for defendant-appellee Independence Fire and Cas. Co.
 Joseph A. Sharp, Tulsa, Okl., for Intervenor-appellee State Farm Mutual Auto. Ins. Co.
 Before PHILLIPS, HILL and DOYLE, Circuit Judges.
 HILL, Circuit Judge.
 
 
 1
 This is an appeal from a declaratory judgment entered by the United States District Court for the Northern District of Oklahoma sitting without a jury. Originally in this diversity action Aetna Casualty and Surety Company sought an adjudication that it was under no liability to defend or indemnify either Clifford Hunt, Mary Hunt, Charles Hunt or Dale Watson as a result of an automobile accident on September 14, 1969.[1] State Farm Mutual Automobile Insurance Company[2] and Independence Fire and Casualty Company[3] were allowed to intervene as they sought similar declaratory judgments. Additionally, Wilford Teel and others were allowed to intervene as they had previously filed suit in Oklahoma state court against the defendants in the instant complaint seeking damages suffered as a result of the accident.
 
 
 2
 The majority of the evidence presented to the trial court was introduced by deposition. It appears from these depositions and other evidence that on September 14, 1969, defendant Dale Watson, while driving a 1963 Chevrolet automobile owned by Charles Hunt, attempted to pass another vehicle on State Highway 169 near Oologah, Oklahoma, and in that attempt struck headon the vehicle in which the Teel family was riding. As a result of that accident, two passengers in the Teel car were killed and two others were seriously injured.
 
 
 3
 The testimony indicates that earlier on September 14 a group of teenagers, including Charles Hunt, Michael Clinton, Dale Watson, Cinda Dudley and Linda Dudley, had met and gone riding in Hunt's 1963 Chevrolet. Hunt allowed Cinda Dudley to drive at least near Oologah Lake and possibly over a much greater distance. Hunt then allowed Clinton to drive until they finally arrived at Linda Dudley's apartment. A short while later, Hunt allowed Clinton to take the car to visit a girlfriend while Hunt remained at the apartment with Dale Watson and the two girls. Clinton returned in the early evening and from this point the testimony is greatly confused and the evidence is generally contradictory.
 
 
 4
 Michael Clinton testified that when he returned to the apartment he did not leave the car; he honked and Linda Dudley appeared at the door, then returned to the apartment. Dale Watson then came out and told Clinton to scoot over because Hunt had given him permission to drive. Clinton slid over, rolled down the window and called to Hunt to verify that such permission had been given, but Watson drove off before Clinton received any reply.
 
 
 5
 Cinda Dudley testified that she did not hear the horn, but that Clinton came to the door of the apartment and that she believed all three boys eventually went out to the car. Later Hunt returned to the apartment and the other boys left.
 
 
 6
 Linda Dudley testified that she heard the car horn and that Watson went out to the car and then returned to the apartment to ask Hunt what time Hunt wanted them to come back. Linda believed that Hunt answered "later".
 
 
 7
 Charles Hunt testified that he heard Clinton arrive but did not hear the horn; that he believed he was in the bathroom and that he apparently was not in the room when Dale Watson left the apartment.
 
 
 8
 Dale Watson had a history of mental deficiency and treatment for such dating back to childhood. Additionally, he suffered serious head injuries in the accident on the fourteenth and thus was unable to recount accurately the details of that day. His testimony was greatly confused and of little value. He did not even recall clearly that he met the girls or went to their apartment. He believed that he and Michael Clinton left from Hunt's house, not the apartment. He did testify that Hunt had not given him permission to drive.
 
 
 9
 From the apartment, Dale Watson drove to Michael Clinton's home where Michael stayed and then went on several missions of his own prior to the accident.
 
 
 10
 At the trial of this case, the parties advanced directly opposite interpretations of the evidence. The injured Teels alleged that these facts established liability on the part of Charles Hunt, Michael Clinton and Dale Watson. They further urged that the three insurance carriers were required to indemnify their insureds under provisions of the various policies in effect on September 14. The insurance carriers each denied any liability based upon policy language which limited their coverage to situations in which the automobile was operated with the permission of the owner, named insured or person in lawful control of the vehicle. They urged that the facts established that Dale Watson had taken the vehicle without permission and that none of the theories advanced by the Teels was applicable to this factual setting.
 
 
 11
 After the presentation of the depositions and the limited amount of oral testimony offered in this case, the trial court adjourned the proceedings to a later date and indicated it would take the matter under advisement. At this point it was assumed that oral arguments would be had at a later time, and the court in fact allotted specific time for the argument of appellants' counsel. Subsequently, without notifying any of the parties, the court made findings of fact and conclusions of law and entered judgment for the insurance carriers on April 2, 1971. That ruling was appealed to this court and was reversed and remanded in an opinion dated August 17, 1972. Aetna Cas. & Surety Co. v. Hunt, 10 Cir., 466 F.2d 1203. In that opinion the case was returned to the district court with instructions to allow additional evidence, grant oral arguments and reconsider the case. Upon return to district court, no additional evidence was offered and oral arguments were heard. The trial court again made findings and conclusions and entered judgment for the carriers. From that judgment the Teels now appeal. We have reviewed the evidence and must affirm.
 
 
 12
 Before proceeding with any discussion of the evidence in this case, however, we must note the various contentions of the parties as to the applicable standard of review in a case such as this. Appellants apparently urge that Cherot v. United States Fidelity & Guar. Co., 264 F.2d 767 (10th Cir. 1959), allows this court to make an independent evaluation of all the evidence as the majority of it was presented in documentary form. Appellees, on the other hand, urge that because some oral testimony was received, the doctrine expressed in Cherot is completely inapplicable. Neither of these contentions is entirely correct.
 
 
 13
 In a series of cases, this court has held that in the absence of oral testimony the appellate court is equally as capable as the trial court of examining the evidence and drawing conclusions therefrom, and that we are under a duty to do so.[4] The nature of documentary evidence is not changed by the fact that it is accompanied by other oral testimony. Where findings of fact by the trial court are based in large measure upon stipulations, depositions and other documentary evidence as in this case, they do not carry the same weight on appeal as findings based entirely on oral testimony. In dealing with all such documentary evidence, the trial court is denied its normal advantage of an opportunity to judge the credibility of the witnesses, but the duty of this court to evaluate the facts does not extend to the making of an independent evaluation without regard to the findings below. Though this lack of opportunity to observe the witnesses establishes the appellate court's duty to evaluate documentary evidence in an equal capacity with the trial judge, we are loath to overturn the findings of a trial court unless they are clearly erroneous.
 
 
 14
 As to the particular holdings of the trial court in this case, the pivotal finding of fact in regard to all three insurance carriers is that Dale Watson did not have permission from anyone to operate the automobile. In fact, the court found that Watson forced himself into the driver's seat of the vehicle and that he knowingly took the car without permission. Without discussing the individual policies in detail, we would indicate that we interpret them as did the trial court, so that if this finding of fact is upheld, the judgment for the insurance carriers must be affirmed. Under any of the theories of liability advanced by the Teels, if Watson took the car without permission then no liability can be established against the carriers, and they are entitled to a favorable declaratory judgment.
 
 
 15
 Despite the contradictions in the evidence, one fact is clear in all the statements. No one clearly testified that Watson received permission to drive from anyone. Charles Hunt denied he gave permission to Watson and in fact testified that earlier that day he told Watson he could not drive. All the other teenagers stated that they did not hear Charles give permission to Watson. There was clearly insufficient testimony to establish implied permission in this case. Though Watson had driven two other cars owned by the Hunt family previously, each time it was with the specific permission of Charles Hunt, and Charles had accompanied Watson on each occasion.
 
 
 16
 The appellants, in effect, wish us to read between the lines and provide evidence that they were unable to produce. To give effect to their suggestion that Charles Hunt wished to be alone with one of the girls for illicit purposes and thus arranged for Watson and Clinton to leave would require us to recreate the evidence on appeal to fulfill their optimistic beliefs. The trial court's holdings are not clearly erroneous and are in fact the only plausible conclusions in light of the evidence. They must be affirmed.
 
 
 17
 Such findings by the trial court deny any assertion of permission or negligent entrustment. Therefore, the contention of the appellants that the policy issued to Clifford and Mary Hunt by Aetna should be reformed to include Charles Hunt as a named insured need not be discussed here as even if it were granted it could not change the result in this case.
 
 
 18
 Affirmed.
 
 
 
 [1]
 Aetna had issued a Family Automobile Policy to Clifford R. Hunt and Mary Hunt which named Charles Hunt, their son, as an "operator". Its coverage included the 1963 Chevrolet involved in the accident and provided in part as follows:
 "Aetna Casualty and Surety Company . . . [a]grees with the insured, . . .: To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of: A. bodily injury, . . . including death resulting therefrom, . . . sustained by any person; B. injury to or destruction of property, . . .; arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, . . .. The following are Insureds . . .: (a) with respect to the owned automobile, (1) the named Insured and any resident of the same household, (2) any other person using such automobile with the permission of the named Insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and (3) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured. . . ." (Emphasis added).
 
 
 [2]
 State Farm Mutual had issued a liability policy to Lester C. and Evelyn Watson, the parents of Dale Watson, which covered a 1965 truck and a 1964 automobile. It provided in part that:
 "State Farm Mutual Automobile Insurance Company . . . agrees with the named insured, . . .: . . . (1) To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury sustained by other persons, and (B) property damage, caused by accident arising out of the ownership, maintenance or use . . . of the owned automobile . . .. . . . such insurance as is afforded by this policy with respect to the owned automobile under: (1) coverages A and B applies to the use of a non-owned automobile by: (a) the first person named in the declaration or, (b) if residents of the same household, his spouse or the relatives of either, . . . provided such use, operation, occupancy or custody is with the permission of the owner or person in lawful possession of such automobile." (Emphasis added).
 
 
 [3]
 Independence Fire and Casualty had issued a liability policy to Leo Clinton, the father of Michael Clinton, which covered a 1963 automobile and which provided in part:
 "Independence Fire and Casualty Company . . . agrees with the insured . . .: . . . To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of: A. bodily injury, . . . including death resulting therefrom, . . .; B. injury to or destruction of property, . . .; arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, . . .. . . . The following are insureds: . . . (b) with respect to a non-owned automobile, (1) the named insured, (2) any relative, but only with respect to a private passenger automobile or trailer, provided his actual operation or (if he is not operating) the actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission. . . ." (Emphasis added).
 
 
 [4]
 Commercial Standard Ins. Co. v. Universal Underwriters, 282 F.2d 24 (10th Cir. 1960); Cherot v. United States Fidelity & Guar. Co., 264 F.2d 767 (10th Cir. 1959); Blackner v. McDermott, 176 F.2d 498 (10th Cir. 1949)