**FRITO–LAY, INC., Appellant,**

v.

**SO GOOD POTATO CHIP COMPANY, Appellee.**

**No. 75–1438.**

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1976.

Decided Aug. 13, 1976.

Rehearing Denied Sept. 3, 1976.

Jim J. Shoemake, St. Louis, Mo., for appellant; Thomas J. Guilfoil, St. Louis, Mo., and Ronald R. Kranzow, Dallas, Tex., on brief.

Richard J. Sheehan, St. Louis, Mo., for appellee; Pat L. Simons, St. Louis, Mo., on brief.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Frito-Lay, Inc. appeals from the judgment of the District Court dismissing its complaint in which it sought damages and injunctive relief against So Good Potato Chip Company resulting from So Good's marketing of corn chip products in a package which Frito-Lay contended was both unfair competition and in breach of a specific contractual undertaking not to use similar packaging. The District Court, sitting without a jury, held that the So Good packaging did not constitute unfair competition because there was no evidence of an attempt by So Good to palm off its products as those of Frito-Lay and the So Good package was not confusingly similar to that of Frito-Lay. The District Court further held that the So Good packaging was not in fact "similar" to the Frito-Lay packaging and therefore rejected the breach of contract claim. We reverse.[1]

So Good has been engaged for many years in the manufacture and marketing of

---

1. Upon the record before us, we hold that the District Court did not err in rejecting the unfair competition claim. On oral argument, Frito- Lay conceded that the factual findings on this claim were not clearly erroneous and instead placed its reliance upon the breach of contract

potato chips and related products in the Saint Louis, Missouri, marketing area. These products have been packaged and marketed under the trade name "So Good". In 1945, So Good entered into a licensing franchise agreement with Frito-Lay, a nationally known manufacturer of consumer food products, to manufacture, package, and sell corn chips under certain Frito-Lay trademarks. From that time until the termination of the franchise agreement, So Good continued to market other food chip products in its own package utilizing its own trademarks, but did not manufacture or market any corn chips except pursuant to the franchise agreement with Frito-Lay and in the Frito-Lay package and under the Frito-Lay trade name "Fritos".

In early 1973, Frito-Lay entered into negotiations with So Good for termination of the franchise agreement. The parties executed a separate cancellation agreement under which Frito-Lay ultimately paid So Good the sum of $1,000,000 in consideration for the cancellation of the licensing franchise. So Good was not precluded from marketing products competitive to those of Frito-Lay, but, as a part of the consideration for the settlement paid to it by Frito-Lay, So Good agreed not to market corn chips in a package "similar in color or design" to the "Fritos" corn chip packaging then used by Frito-Lay.[2]

So Good had prepared a two-color design package (red on white) which was attached as a part of the agreement and was approved as acceptable by Frito-Lay. Corn chip products were thereafter marketed in this package until July, 1973, when, without prior notice to or approval by Frito-Lay, So Good began to market its corn chips in a three-color package, adding to the colors white and red the brownish color which Frito-Lay contends makes the package "similar" to its own. The District Court found the third color, as well as the red and white colors, to be of different intensities from those used by Frito-Lay and further found the So Good design to be dissimilar from the Frito-Lay design. It therefore concluded that So Good did not breach its agreement with Frito-Lay by the use of the three-color package in issue in this case.

### Scope of Review

There is no contention that the termination agreement was ambiguous. The District Court construed the word "similar" without resort to extrinsic evidence.[3]

■ Where, as here, there is no dispute as to the evidence upon which the District Court's findings are based, where there are no credibility issues before this Court, and where both the contract and the physical evidence upon which the District Court based its findings are a part of the record on appeal, we are not confined by the customary clearly erroneous standard of review. First, no special deference is required in the review by this Court of the interpretation given by the District Court to a nonambiguous agreement. *Ralston Purina Co. v. Hartford Accident & Indemni-*

---

claim. Since we agree with the contention relied upon, it is unnecessary for us to discuss further the unfair competition claim.

2. The exact language of the contract was as follows:

At the opening of business April 1, 1973, So Good shall cease all use of the FRITOS trademark, the barred oval trademark, and any packaging similar in color or design to the FRITOS brand corn chip packaging currently distributed by So Good and Frito-Lay. It is contemplated that Frito-Lay will on April 1, 1973, commence its own distribution of FRITOS brand corn chips in the marketing area currently covered by So Good. So Good has attached to this Agreement a drawing of the design of So Good's future corn chip package and a description of the color of said package, which design and color have been approved by FRITOS and as to which they have no objection, a copy of which design with color description is hereby marked Exhibit A and made a part hereof of this Agreement.

3. The District Court stated:

What does the word "similar" mean as used by the parties in their agreement? Black's Law Dictionary defines it as: nearly corresponding; resembling in many respects; somewhat like; having a general likeness . . . also sometimes exactly like; identical, exactly corresponding at least in all essential particulars.

*ty Co.,* 540 F.2d 915, No. 75–1536 (8th Cir., 1976), at 918 n.3; *Teamsters, Local No. 688 v. Crown Cork & Seal Co.,* 488 F.2d 738, 740 (8th Cir. 1973); *Motor Carriers Council v. Local Union No. 600,* 486 F.2d 650, 653 (8th Cir. 1973); *Dingman v. United States,* 429 F.2d 70, 72 (8th Cir. 1970). Second, the same exhibits (the disputed packages) are before this Court as were before the District Court. The trial judge reached his finding of nonsimilarity not on the basis of expert testimony, but upon the basis of his personal observation of the appearance of the packages of Frito-Lay and So Good arranged side-by-side. This Court must view the same evidence and, in doing so, is free to reach a different conclusion unrestricted by the limitation of the clearly erroneous standard of review. *See Ralston Purina Co. v. General Foods Corp.,* 442 F.2d 389, 391 (8th Cir. 1971); *Deep Welding, Inc. v. Sciaky Bros., Inc.,* 417 F.2d 1227, 1229 (7th Cir. 1969), *cert. denied,* 397 U.S. 1037, 90 S.Ct. 1354, 25 L.Ed.2d 648 (1970) ("[W]here the evidence is documentary or where it involves the actual examination of a product or a device in operation * * * the Court of Appeals has the right to interpret such evidence for itself and is as equally competent as the trial court to do so.") *Cf. Air Terminal Cab, Inc. v. United States,* 478 F.2d 575, 578 (8th Cir.), *cert. denied,* 414 U.S. 909, 94 S.Ct. 228, 38 L.Ed.2d 146 (1973); *United States v. Kavanagh,* 308 F.2d 824, 828 (8th Cir. 1962); *United States v. Mississippi Valley Barge Line Co.,* 285 F.2d 381, 388 (8th Cir. 1960).[4]

*The Termination Agreement*

A manufacturer has a cause of action under the law of unfair competition against any competitor who markets its product in a form which is "deceptively similar" or "confusingly similar" to the product of the other manufacturer. *See generally,* 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition §§ 13–20 and §§ 87–122 (1954); W. Prosser, Handbook of the Law of Torts § 130, at 957–60 (4th ed. 1971). We think, and the District Court so found,[5] that the only logical inference is that Frito-Lay bargained for something more than prevention of the use of "confusingly similar" packaging. It is apparent that Frito-Lay sought to avoid this burden of proof by bargaining for an agreement from So Good that it would not market its corn chips in a package which was "similar" to that of Frito-Lay, whether deceptively similar or not. Cases which have defined "similar" in conjunction with "confusion" are therefore inapposite.[6]

Cases which have construed the word "similar" in the context of contractual understandings have recognized that the essence of "similar" is that there is *some* difference. *See, e. g., Transnational Insurance Co. v. Rosenlund,* 261 F.Supp. 12, 22–23 (D.Or.1966); *United States v. Adams,* 160 F.Supp. 143, 151 (W.D.Ark.1958); *Miller v. Allstate Insurance Co.,* 66 Wash.2d 871, 405 P.2d 712, 714 (1965). *Cf. United States v. Raynor,* 302 U.S. 540, 547, 58 S.Ct. 353, 82 L.Ed. 514 (1938). "Similar" has been held

**4.** The factual determinations underlying the issue of "similarity" remain subject to the clearly erroneous standard of review. Fed.R.Civ.P. 52(a). The "similarity" determination is itself more a mixed question of law and fact. The distinction may be elusive in a case such as this, where, upon the narrow determination of similarity, we are in truth expressing our definite and firm conviction that a mistake has been made. *See United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

**5.** The District Court stated:
The Court concludes in the following two instances such agreement could grant plaintiff greater protection than plaintiff would receive under the law of unfair competition:

a) by interpreting the contract to prohibit defendant from using any "packaging similar in color" to the defendant's corn chip packages plaintiff would be entitled to relief without reference to the question of design, b) by relieving plaintiff of the burden of showing confusion or likelihood of confusion in consumers.

**6.** *See, e. g., Dawn Donut Co. v. Day,* 450 F.2d 332, 333 (10th Cir. 1971); *Drexel Enterprises, Inc. v. Richardson,* 312 F.2d 525, 528 (10th Cir. 1962); *Avrick v. Rockmont Envelope Co.,* 155 F.2d 568, 572 (10th Cir. 1946). *See generally,* 3 R. Callmann, The Law of Unfair Competition, Trademarks and Monopolies §§ 80–82 (3d ed. 1969).

to mean "conforming" or "corresponding", *Butterfield v. Oculus Contact Lens Co.,* 332 F.Supp. 750, 757 (N.D.Ill.1971); "a general likeness, an approximation, something less than absolute identity", *New York v. United States,* 98 F.Supp. 855, 860 (N.D.N.Y.), *aff'd per curiam,* 342 U.S. 882, 72 S.Ct. 152, 96 L.Ed. 662 (1951); "[n]early corresponding, resembling in many respects, somewhat like, having a general likeness", *Thompson v. Commissioner,* 203 F.2d 820, 825 (4th Cir. 1953); *Ambrosia Brewing Co. v. Bowles,* 147 F.2d 550, 552 (Em.App.1944); *Tedesco v. United States,* 118 F.2d 737, 741 (9th Cir. 1941); "not identity, but resemblance between different things". *United States v. Raynor, supra,* 302 U.S. at 547, 58 S.Ct. 353 at 356. *See also* Black's Law Dictionary 1554 (4th ed. 1968); Webster's Third New International Dictionary 2120 (1966).[7]

### The Packages

■ The contract requirement that So Good not use a package "similar in color or design" to that of Frito-Lay is expressed in the disjunctive. Thus, if either the color or the design is similar, a breach of the contract has occurred.

We agree with the District Court that the So Good package *design* is not similar to the Frito-Lay design, and that point is not seriously pressed on appeal. We thus turn next to the *colors* employed by So Good and by Frito-Lay. The basic color for the Frito-Lay package is of brownish appearance with supplemental red and white coloring of portions of the design. The original So Good package used white as its principal color and as such was clearly not similar to

the Frito-Lay package. The trouble arose when So Good decided to market its corn products with a three-color package and utilized another brownish color for that purpose.[8] So Good had in the past used the same color in marketing certain of its other products. This fact is not in any way determinative of the issue, however, because the outcome does not depend upon the good faith of So Good or its motives or reasons for adding the third color. The issue resolved by the District Court and now before us on appeal is simply this: Are the colors employed by So Good similar to those employed by Frito-Lay? We think they are. Our view of the respective packages is that they each utilize three colors which are derived from the same three basic colors and which are not in any sense strikingly different from each other. The colors in combination of the So Good package are similar to the colors in combination of the Frito-Lay package.[9]

We reach this conclusion by applying the same "eyeball" test as that applied by the District Court. We do not say that six eyes are necessarily apt to reach a more accurate assessment than are two, but, under the standard of review applicable in this case, our six eyes tell us that the color of the packages is similar. From this it must follow that So Good was in clear violation of its agreement with Frito-Lay and that Frito-Lay is entitled to appropriate relief.

Accordingly the judgment is reversed and the cause is remanded for a determination of appropriate legal and equitable relief and for the entry of judgment not inconsistent with this opinion.[10]

---

7. The words "exactly like", "identical", and "exactly corresponding" occasionally appear as alternative meanings, *see* note 3, *supra.* Identical colors are of course similar; it does not follow that two colors must be identical to be similar. In the present setting, "similar" must be given its popular or generally understood meaning.

8. No useful purpose would be served by attempting to identify specifically the shade of color, whether it be called buff, tan, or brown.

9. So Good also used a transparent window strip on its larger packages, but not on its smaller packages. Frito-Lay did not. This fact

has relevance only to the similarity of design and not the use of similar colors.

10. Frito-Lay does not contest on appeal the entry of judgment below in favor of So Good on a counterclaim asserting breach of contract. Pursuant to the termination agreement, Frito-Lay agreed to pay So Good the cost of repainting trucks so as to remove markings related to "Fritos" brand corn chips, not to exceed $300 per truck, which Frito-Lay failed to do. The District Court awarded So Good $18,000 on the counterclaim for the costs of repainting trucks. This award should be incorporated in the amended judgment.