**Allen C. HOEFELMAN, Plaintiff,**

v.

**CONSERVATION COMMISSION OF the MISSOURI DEPARTMENT OF CONSERVATION, et al., Defendants.**

No. 82–4015–CV–C–5.

United States District Court, W. D. Missouri, C. D.

May 21, 1982.

Robert J. Swift, Jr., Jefferson City, Mo., for plaintiff.

Cyril Hendricks, Jefferson City, Mo., Steven Steinhilber, Morris & Foust, Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER

SCOTT O. WRIGHT, District Judge.

This action arises under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* The plaintiff asserts that his transfer by the Conservation Commission of the Missouri Department of Conservation from his position as Chief Aircraft Pilot to Equipment Supervisor when he reached the age of 60 constituted unlawful discrimination. 29 U.S.C. § 623(a)(2). The Department has instituted a policy under which none of its pilots may continue to fly its aircraft once the pilot has attained the age of 60. The ADEA permits otherwise unlawful discrimination "where age is a bona fide occupational qualification ["BFOQ"] reasonably necessary to the normal operation of the particular business." 29 U.S.C. § 623(f)(1).

A bench trial was held in order to determine whether the age restriction applied by the Department of Conservation to its pilots is a BFOQ reasonably necessary for the

normal operation of the Department's business. After consideration of the evidence presented at trial, and the oral arguments and briefs of both parties, the Court finds that the age 60 restriction adopted by the Department is a BFOQ and that the plaintiff is not entitled to any relief in this Court.

## I. FINDINGS OF FACT

1. Allen Hoefelman is 61 years old and has been an employee of the Missouri Department of Conservation since January 1, 1984. In July of 1962, he was appointed Chief Pilot of the Conservation Commission. That position was changed to Aircraft Chief Pilot in July of 1976 and carries a Missouri Civil Service Rating of GS–18. On April 15, 1981, he was transferred by the Department from the position of Aircraft Chief Pilot to the position of Equipment Supervisor. The change in position involved no alteration of salary, grade, or job benefits. The duties of the Equipment Supervisor include the management of the Department's fleet of motor vehicles and administrative paper work. The job entails a great deal of paper work, but does not include any flying responsibilities.

2. As Aircraft Chief Pilot, the plaintiff transported passengers on approximately 75 percent of the missions flown for the Department and engaged in low-level flying when conducting wildlife surveys and fire patrols. Other duties of the Aircraft Chief Pilot include supervision of all flight operations, preparation of an annual aviation budget, maintenance of Federal Aviation Administration ("FAA") manuals, and preparation of an operations manual.

3. In 1977, the plaintiff prepared an "Operations Manual" for the Conservation Commission. The Manual provided that any pilot who has reached the age of 60 could not engage in hazardous low-level flying missions. The plaintiff placed this provision in the Manual because he believed that the aging processes significantly affected a pilot's ability to safely engage in low-level flying. Plaintiff believed that aging slowed the reaction time of a pilot and led to increased fatigue. Both of these considerations led to his decision to restrict low-level flying to pilots who have not attained the age of 60.

4. Out of concern for the safety of its pilots and others, the Commission instituted an official policy under which persons who attain the age of 60 would not be permitted to pilot Department aircraft. The Commission adopted the FAA's requirements for commercial airline pilots and applied those requirements to its own pilots. As a result of this policy, the plaintiff was notified on April 15, 1981 that he was being reassigned from the position of Aircraft Chief Pilot to the position of Equipment Supervisor.

5. The plaintiff currently holds a valid First Class Medical Certificate from the FAA. The FAA exam is not able to sufficiently detect whether or not a particular pilot is a safety risk. The exam is only an indication of the pilot's health at the moment it is conducted. The effects of aging, apart from the determination of senility, are not measurable by the FAA exam.

6. The aging process affects the psychomotor functioning of pilots over the age of 60 in a manner which impairs their ability to operate an aircraft safely under particular circumstances. Medical science cannot predict, on an individual basis, the likelihood that a pilot who has reached the age of 60 will become incapacitated during flight. Neither the state of knowledge nor feasible evaluation systems presently exist that would enable businesses to convert to an "open-ended" system which evaluates aging pilots on an individual basis.[1]

1. The Court has credited the testimony of Dr. Earl T. Carter who is a staff physician at the Mayo Clinic in Rochester, Minnesota and who is a specialist in aviation medicine. It is Dr. Carter's opinion that an age 60 rule is, at the present time, the only operationally feasible one. He believes that it should apply to all pilots regardless of whether they are employed by commercial airlines, private companies or governments.

The Court has chosen not to adopt the opinions of Dr. Stanley R. Mohler who is also an aviation medicine specialist at the Wright State University School of Medicine in Dayton, Ohio.

7. The age of 60 has been arbitrarily chosen as the age where the concerns for safety outweigh the greater experience possessed by older pilots. The age 60 restriction favors pilots since the data compiled by the FAA suggests that an age restriction of 55 might have been a valid safety precaution. Experience may some day demonstrate the need to raise or lower the age, but no reason or evidence presently exists which demonstrates that the age 60 restriction should be abandoned or modified.

8. Though the FAA age restriction applies only to commercial airline pilots, it was considered by the Department to provide excellent guidance and was adopted out of concern for the safety of the public and Department personnel. The Department relied solely on the research conducted by the FAA and did not undertake any independent research. The Department considers the FAA age restriction applicable to its pilots, though the FAA does not consider it applicable, since its pilots do not fly with co-pilots, carry passengers 75 percent of the time, and routinely engage in hazardous low-level flying.

## II. CONCLUSIONS OF LAW

The ADEA, enacted in 1967, prohibits age discrimination against persons aged 40 through 64. Pub.L.No.90–202 §§ 4, 12, 81 Stat. 602, 603, 607. It was amended in 1974 to apply to state and local governments. Pub.L.No.93–259, § 28(a)(2), 88 Stat. 55, 74. Its legislative history manifests a Congressional intent to require employment decisions to be made on the basis of ability rather than age. 29 U.S.C. § 621(b). *See*

Dr. Mohler is of the opinion that medical science can presently predict with 99 percent certainty whether or not a pilot will have a heart attack within two years after the exam, and that the psychological and psychomotor abilities of a healthy pilot do not begin to decline to a point where safety becomes a concern until the pilot reaches the age of 90 or older. The testimony, however, contradicted the plaintiff's own testimony in which he admitted that pilots should not be able to engage in low-level flying at age 60 because of their slowed reaction time and the increase in fatigue.

H.R.Rep.No.805, 90th Cong., 1st Sess.; S.Rep.No.723, 90th Cong., 1st Sess. 1. The ADEA permits otherwise unlawful age discrimination, however, "where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business." 29 U.S.C. § 623(f)(1).

■ The plaintiff was transferred from the position of Aircraft Chief Pilot to the position of Equipment Supervisor solely because the Department adopted an age restriction under which no pilot would be permitted to operate its aircraft after the pilot has reached the age of 60. The Department's decision to transfer the plaintiff solely on the basis of his age is a *per se* violation of the ADEA. *Houghton v. McDonnell Douglas Corp.*, 553 F.2d 561, 564 (8th Cir.), *cert. denied*, 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 451 (1977).[2] The Department, therefore, has the burden of proving that its actions were within the scope of the BFOQ exemption. *Id.* This burden requires the Department to show that either (1) it has a factual basis for believing that substantially all of the older employees are unable to perform their duties safely and efficiently or (2) that some older employees possess traits precluding safe and efficient job performance unascertainable other than through knowledge of the employee's age. *Id.; EEOC v. City of St. Paul*, 671 F.2d 1162 at 1167–68 (8th Cir., 1982); *EEOC v. County of Santa Barbara*, 666 F.2d 373 (9th Cir. 1982); *Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224, 234–36 (5th Cir. 1976). The defendants do not contend that there is a factual basis for believing that substantially all older pilots are unable to perform

2. The defendants initially contend that no unlawful age discrimination has taken place because the plaintiff was merely transferred without any loss of salary or job benefits. There may be considerable merit to this position. *See, Frazer v. Kentucky Fried Chicken National Management Co.*, 491 F.Supp. 1099 (M.D.Ga. 1980). For the sake of this action, however, the Court will consider the transfer from Aircraft Chief Pilot to Equipment Supervisor as an imposition of working conditions which are less pleasant, less satisfying and less rewarding, and thus as unlawful age discrimination under 29 U.S.C. § 623(a)(1) and (2).

their duties safely and efficiently, but argue that the debilitating effects of aging on pilots can hinder safe and efficient job performance, and are unascertainable other than through knowledge of the pilot's age.

The credible evidence presented to the Court established that the arbitrary age 60 restriction adopted by the Department is the only practical method of insuring the safety of the Department's flying operations. The plaintiff even testified that he recommended an age 60 restriction for Department pilots who would be asked to fly hazardous low-level missions because he recognized, from his own experience, that the debilitating effects of aging, such as a slower reaction time and increased fatigue, presented obvious safety risks for the Department when pilots over the age of 60 are permitted to fly at low levels. While the plaintiff contends that the Department must determine on an individual basis whether a particular pilot is likely to become incapacitated during flight, the Court is convinced that medical science cannot currently render sufficiently reliable individualized predictions. This conclusion in this case should not be viewed as a closing of this Court's doors to new knowledge. The Court is mindful that the information concerning the effects of aging is not a stagnate body of knowledge. With respect to this case, however, the defendants have carried their burden of demonstrating that they have relied on the best medical opinions available.

There can be no question that safety is the essence of the Department's flying operations and is the paramount factor in the occupational decisions made by the defendants with respect to their pilots. As a result, the Department has less difficulty proving that age is a BFOQ. *EEOC v. County of Santa Barbara*, 666 F.2d 373, 377 n. 9 (9th Cir. 1982). The very same safety issues, as they apply to age restrictions on pilots, were recently analyzed by the Sixth Circuit in *Tuohy v. Ford Motor Company*, 675 F.2d 842 (6th Cir., 1982). In *Tuohy*, the circuit court reframed the safety issue for the lower court on remand by stating that the issue at trial should be whether safety considerations render an age 60 restriction reasonably necessary. *Id.* at 845. The defendant maintained a fleet of passenger aircraft and had removed Tuohy from flight status when he reached the age of 60. The circuit court ordered that the defendant "must present a factual basis for its determination that medical science cannot predict, on an individual basis, the likelihood that a pilot who has reached age 60 will become incapacitated during flight." *Id.* The case was remanded in order to permit the plaintiff to also show that medical science does have the means of measuring health independent of age and that there is no factual basis for believing that all pilots age 60 and over are unable to perform their duties safely. *Id.*

The case at bar has presented this Court with the same conflicting positions. The plaintiff and the Department each presented expert testimony concerning the capabilities of medical science. The plaintiff's expert stated that he could predict with 99 percent certainty whether a pilot would become incapacitated due to a heart attack within the two years following the examination, and that physiological and psychomotor abilities do not decline to a point where safety should become a concern until after a healthy pilot reaches the age of 90. The defendant's medical expert, on the other hand, testified that psychomotor abilities, which are most important to the safe operation of an aircraft, do decline around sixty years of age and that medical examinations required of pilots are not completely able to detect pilots who may be safety risks. The Court has found the testimony of the defendants' expert to be more credible. Thus, the defendants have shown that safety considerations render an age 60 rule reasonably necessary to their flying operations.

Accordingly, it is hereby

ORDERED that judgment be for the defendants. It is further

ORDERED that each party bear its own costs.