Allen C. HOEFELMAN, Appellant,

v.

CONSERVATION COMMISSION OF the MISSOURI DEPARTMENT OF CONSERVATION, et al., Appellees.

No. 82–1733.

United States Court of Appeals,
Eighth Circuit.

Submitted April 12, 1983.

Decided Oct. 5, 1983.

Robert J. Swift, Jr., Carson, Monaco, Coil, Riley and McMillin, P.C., Jefferson City, Mo., for appellant.

Morris & Foust, Max W. Foust and Steven D. Steinhilber, Kansas City, Mo., for appellees.

Before LAY, Chief Judge, McMILLIAN and JOHN R. GIBSON, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Allen C. Hoefelman appeals from the judgment of the district court[1] denying his claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* Hoefelman was transferred from Chief Aircraft Pilot of the Conservation Commission to Equipment Supervisor when he reached age 60. He contends that the district court finding that age was a bona fide occupational qualification for pilots employed by the Department of Conservation was clearly erroneous. We affirm.

Most of the district court's findings are based on undisputed facts. Allen Hoefelman has been working for the Missouri Department of Conservation since January 1, 1948. In July 1962, he was appointed Chief Pilot of the Conservation Commission, which position was later changed to Aircraft Chief Pilot in July 1976. While he held the position of Aircraft Chief Pilot, Hoefelman flew low level flying missions while conducting wildlife surveys and fire patrols. He also frequently transported passengers.

In 1977 Hoefelman drew up an "Operations Manual" for the Conservation Commission, providing among other things that pilots who had reached the age of 60 would no longer be allowed to fly low level hazardous missions. Hoefelman included this provision because he thought that pilots age 60 and older had slower reaction time and increased fatigue, which would interfere with their ability to fly safely at low levels.

Subsequently, the Commission instituted an official policy prohibiting pilots above the age of 60 from flying Conservation Commission aircraft. The Conservation Commission did no independent research in formulating this policy, but solely relied on studies of the Federal Aviation Administration (FAA) and adopted its age 60 limit. Although the FAA standards setting age 60 as the cut-off date were not meant to apply to other agencies, the Commission believed the FAA standards to be applicable because of the particular conditions under which its pilots fly. The Commission pilots do not fly with co-pilots, they carry passengers 75% of the time, and frequently engage in low level flying, which is more hazardous than other types of flying. The Conservation Commission adopted the age 60 limit solely out of concern for the safety of its own pilots and others who might be affected by their flying Commission aircraft.

At the time this policy was formally adopted in April 1981, Allen Hoefelman had already attained the age of 60 years. He was therefore automatically removed from his position as Aircraft Chief Pilot and was transferred to the position of Equipment Supervisor, a job which carried the same salary, grade and job benefits as his previous position.

This appeal concerns the findings of the district court on the effects of aging on pilots, based on conflicting expert testimony presented by depositions. The district court found that given the present state of medical knowledge, there is no way to predict whether particular pilots will be likely to become incapacitated during flight. It is, however, known that aging detrimentally affects the psychomotor functioning of pilots, impairing their ability to fly aircraft safely under certain conditions. The age of 60 has been chosen arbitrarily as the age when concerns about the pilot's ability to

1. The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

fly safely begin to outweigh the benefits of the pilot's individual experience and ability. This age limit actually favors pilots since the data available point to the age of 55 as being the date at which significant psychomotor deterioration begins to take place. *Hoefelman v. Conservation Comm.*, 541 F.Supp. 272, 273–74 (W.D.Mo.1982).

In making these factual findings, the district court relied on the testimony of the Commission's expert witness, Dr. Earl T. Carter, a staff physician at the Mayo Clinic whom the court identified as a "specialist in aviation medicine."[2] *Hoefelman, supra,* 541 F.Supp. at 273, n. 1. Dr. Carter testified that although there are undoubtedly many pilots over the age of 60 who can fly safely, it was his opinion that with the present state of medical knowledge it is virtually impossible to determine whether individual pilots over the age of 60 are able to fly safely. Dr. Carter testified that Hoefelman's holding a valid First Class Medical Certificate issued by the FAA was irrelevant since the examination on which this certificate is granted cannot measure the effects of aging, and thus cannot predict whether a particular pilot is a safety risk.

The district court specifically rejected the testimony of plaintiff's expert witness, Dr. Stanley R. Mohler, an aviation medicine specialist at Wright State University School of Medicine in Dayton, Ohio. Dr. Mohler had testified that he could predict "with 99% certainty" whether a pilot would have a heart attack within two years after he examined him, and that psychological and psychomotor abilities of a healthy pilot do not necessarily decline significantly until the pilot reaches the age of 90 or more. The court gave as one of its reasons for rejecting Dr. Mohler's testimony the fact that Hoefelman himself had testified that he did not believe pilots over the age of 60 should be allowed to fly low-level missions because their reaction time was slower and they were more easily fatigued.

**2.** Dr. Carter has testified in a number of cases where age limitations were at issue. *See, e.g.: Houghton v. McDonnell Douglas Corp.,* 553

## I.

The standards in age discrimination cases have been set forth in *EEOC v. City of St. Paul,* 671 F.2d 1162 (8th Cir.1982), and *Houghton v. McDonnell Douglas Corp.,* 553 F.2d 561 (8th Cir.), *cert. denied,* 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 451 (1977). Following the rules stated in *Houghton,* the district court first concluded that the action of the Conservation Commission was a per se violation of ADEA since it was based solely on Hoefelman's age. The court then placed the burden of proving that age was a bona fide occupational qualification on the Conservation Commission as required by *Houghton.*

In *Houghton* we held that in order to establish age as a bona fide occupational qualification, an employer must demonstrate that either (1) the employer has a factual basis for believing that substantially all older pilots are unable to perform the duties of the job safely and efficiently, or (2) that some older pilots possess traits precluding safe and efficient job performance, which traits are unascertainable other than through knowledge of the pilot's age. 553 F.2d at 564.

In *Tuohy v. Ford Motor Co.,* 675 F.2d 842 (6th Cir.1982), a pilot brought an ADEA claim against Ford when he was removed from flight status upon reaching the age of 60 and was required to take mandatory retirement. Reversing the district court's grant of summary judgment for Ford, the Court of Appeals for the Sixth Circuit enunciated standards similar to those set out in *Houghton* to be met by an employer seeking to establish a bona fide occupational qualification defense. *Tuohy, supra,* 675 F.2d at 844.

## II.

The district court concluded that the Conservation Commission had not violated ADEA in removing Hoefelman from his position as Aircraft Chief Pilot since age was a bona fide occupational qualification

F.2d 561 (8th Cir.), *cert. denied,* 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 451 (1977), at 283.

for pilots in Hoefelman's position. In reaching this conclusion the district court correctly applied the standards set forth by this court in *City of St. Paul, supra,* and *Houghton, supra.* The district court found that age was a bona fide occupational requirement because there was no way to determine whether individual pilots were able to fly safely and efficiently except by reference to their age.

■ Hoefelman argues that because this determination was based on the testimony of the two expert witnesses, submitted by deposition, the case is removed from the ambit of Rule 52(a), Federal Rules of Civil Procedure, "and permits this court to assess the credibility of the expert witnesses and to disregard the trial court's finding." The cases he cites do not fully support his argument. *Aetna Casualty and Surety Co. v. Hunt,* 486 F.2d 81 (10th Cir.1973), involved documentary evidence, stipulations and depositions. While the court recognized that trial court findings based largely on documentary evidence did not carry the same weight on appeal as findings based entirely on oral testimony, the court also made it clear that the duty of the appellate court "does not extend to the making of an independent evaluation without regard to the findings below." *Aetna Casualty, supra,* 486 F.2d at 84. The court stated that it was loathe to overturn the findings of the trial court unless they are clearly erroneous. The other cases cited by plaintiff did not involve depositions, but instead involved purchase orders and contracts, *Arnolt Corp. v. Stanson Corp.,* 189 F.2d 5 (7th Cir.1951); affidavits and agreed statements of facts, *Blackwelder Furniture Co. v. Seilig Mfg.*

*Co., Inc.,* 550 F.2d 189 (4th Cir.1977); and correspondence and other documents concerning sales and shipments of wool, *Iravani Mottaghi v. Barkey Importing Co.,* 244 F.2d 238 (2d Cir.), *cert. denied,* 354 U.S. 939, 77 S.Ct. 1402, 1 L.Ed.2d 1538 (1957).

The tendency of many courts of appeals to accord Rule 52(a) a different treatment where documents or uncontradicted testimony was involved was discussed in detail in 9 C. Wright and A. Miller, *Federal Practice & Procedure* § 2587, at 740. Many courts, including this one, have seemingly reached contradictory positions on this issue.[3] We believe that most of this uncertainty has to a great degree been laid to rest in *Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). As demonstrated by the dissenting opinion of Justice Marshall, *Pullman-Standard* essentially was a documentary case. The Supreme Court made clear that Rule 52 applies to all findings of fact of the district court and that it is an invasion of the district court's province to reverse a finding of fact for any reason other than that it is clearly erroneous. As the court stated in *Pullman-Standard:*

> Rule 52(a) broadly requires that findings of fact not be set aside unless clearly erroneous. It does not make exceptions or purport to exclude certain categories of factual findings from the obligation of a court of appeals to accept a district court's findings unless clearly erroneous. It does not divide facts into categories;
> . . . .

*Pullman-Standard v. Swint,* 456 U.S. at 287, 102 S.Ct. at 1789.

---

**3.** *Compare Swanson v. Baker Industries, Inc.,* 615 F.2d 479, 483 (8th Cir.1980); *Air Terminal Cab, Inc. v. United States,* 478 F.2d 575, 578 (8th Cir.), *cert. denied,* 414 U.S. 909, 94 S.Ct. 228, 38 L.Ed.2d 146 (1973); *United States v. Kavanagh,* 308 F.2d 824, 828 (8th Cir.1962); and *United States v. Mississippi Val. Barge Line Co.,* 285 F.2d 381, 388 (8th Cir.1960) (the clearly erroneous standard does not apply where the evidence presented to the trial court was not oral); *with Worthen Bank & Trust Co. v. Franklin Life Ins. Co.,* 370 F.2d 97, 99–100 (8th Cir.1966); *Lewis v. Super Valu Stores, Inc.,* 364 F.2d 555, 556 (8th Cir.1966); *Baker v.*

*United States,* 343 F.2d 222, 224 (8th Cir.1965); *Cole v. Neaf,* 334 F.2d 326, 329 (8th Cir.1964); *Barryhill v. United States,* 300 F.2d 690, 693–94 (8th Cir.1962); *G.W. Van Keppel Co. v. CIR,* 295 F.2d 767, 771 (8th Cir.1961); *Miller v. CIR,* 295 F.2d 538, 541 (8th Cir.1961); *Maryland Cas. Co. v. Manufacturers & Merchants Indem. Co.,* 249 F.2d 630, 633 (8th Cir.1957); *Commercial Standard Ins. Co. v. Maryland Cas. Co.,* 248 F.2d 412, 416 (8th Cir.1957); and *Star Bedding Co. v. Englander Co., Inc.,* 239 F.2d 537, 541 (8th Cir.1957) (the clearly erroneous test applies to findings in all nonjury cases, regardless of the nature of the evidence).

Here we do not deal with a credibility determination in the sense that frequently faces a district court. We have conflicting opinion testimony from two well qualified expert witnesses. The question is one of assessing and evaluating the strength and weaknesses of the testimony of the two experts on the effect of aging on pilots. The district court has weighed and evaluated the directly contradictory expert testimony and made its finding of facts. It is the particular province of the district court to find facts. *Pendergrass v. New York Life Ins. Co.,* 181 F.2d 136, 138 (8th Cir. 1950).

■ We believe that the factual determinations of the district court based on the conflicting depositions presenting the opinions of the expert witnesses should not be overturned unless they are clearly erroneous.[4] We may reach such conclusion when, although there is evidence to support a finding, on the entire evidence we are left with the definite and firm conviction that a mistake has been committed. *Pullman-Standard v. Swint, supra,* 456 U.S. at 284, n. 14, 102 S.Ct. at 1788, n. 14, *quoting United States v. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Having reviewed the record, we are not left with the definite and firm conviction that a mistake has been committed, and accordingly cannot make a determination that the findings of the district court were clearly erroneous.

■ Dr. Carter has been a staff physician at the Mayo Clinic for twenty-two years. He holds a certificate as a diplomat in aerospace medicine from the American Board of Preventive Medicine, and served as chairman of this Board for three years. He has held the office of President of the Aerospace Medical Association, and is now President of the International Academy of Aviation and Space Medicine. He has responsibility for the department of the Mayo Clinic which deals with aerospace medicine, and himself examines approximately 500 pilots a year. Dr. Carter's experience has given him the opportunity to deal with a wide range of pilots of all ages, and to learn about aircraft and the aerospace industry.

Dr. Carter testified that many of the conditions which render pilots unable to fly are related to aging. He testified that with respect to I.Q. tests, the results must be viewed with regard to both the verbal and the performance score. While the verbal I.Q. scores of pilots over 60 may be quite high, their performance I.Q. begins to decline perceptibly around the age of 60. According to Dr. Carter's testimony psychomotor functions, which are the most significant factor to be considered in determining whether pilots can safely fly, are related to performance I.Q.

Although Dr. Mohler also has impressive qualifications, we conclude that the trial court did not err in rejecting his testimony. Dr. Mohler testified that in his opinion the primary reason for the FAA's original adoption of the age 60 limitation in the 1950's was the concern about heart disease, and the possibility of heart attacks, in men over age 60. Mohler testified that because of advances in medical science, he was able to predict to a 99% degree of certainty that appellant Hoefelman would not have a heart attack while in flight, and that the psychomotor abilities of pilots do not decline significantly until they reach the age of 90. Mohler's testimony on this issue was undercut by that of Hoefelman himself. Hoefelman stated that he believed that pilots over 60 had a slower reaction time and were more easily fatigued. It was his con-

4. Our present decision is not contrary to the rule we stated previously in *Frito Lay, Inc. v. So Good Potato Chip Co.,* 540 F.2d 927 (8th Cir.1976), and *Gay Lib v. University of Missouri,* 558 F.2d 848 (8th Cir.1977), *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 789 (1978), that "this court is not bound by the district court's credibility evaluation of witnesses where the evidence is submitted by deposition or in other documentary form." *Id.* at 853, n. 10. In *Frito Lay* virtually the sole evidence presented was in the form of contracts and the actual corn chip packaging. 540 F.2d at 929–30. In *Gay Lib* the issue was not purely factual as here, but rather was "closely intertwined with legal considerations." 558 F.2d at 854, n. 10.

cern with these factors which led him to include a clause in the Operations Manual prohibiting pilots over age 60 from flying low-level and hazardous missions.

Hoefelman argues that the district court's rejection of Dr. Mohler's testimony was inconsistent with acceptance of his testimony in a later decision, *EEOC v. Missouri State Highway Patrol,* 555 F.Supp. 97 (1982). We see no inconsistency in the fact that the district court accepted and relied upon Dr. Mohler's testimony in one case but found his testimony in a different case involving a different situation not to be persuasive. The evaluation of expert testimony is a factual determination to be made by the trial court.

We conclude that application of the clearly erroneous standard is proper in this case. Since we are not left with a definite and firm conviction that a mistake has been committed, we cannot conclude that the factual determinations of the district court were clearly erroneous. Accordingly, the judgment of the district court is affirmed.

McMILLIAN, Circuit Judge, specially concurring.

I concur in the affirmance of the judgment of the district court. The district court's finding that age was a bona fide occupational qualification was not clearly erroneous. The Conservation Commission established through expert medical evidence that it had "a factual basis for believing that ... some older pilots possess traits precluding safe and efficient job performance unascertainable other than through knowledge of the pilot's age." *Houghton v. McDonnell Douglas Corp.,* 553 F.2d 561, 564 (8th Cir.), *cert. denied,* 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 451 (1977). *See Tuohy v. Ford Motor Co.,* 675 F.2d 842, 844–45 (6th Cir.1982); *Usery v. Tamiami Trail Tours,* 531 F.2d 224, 235–36 (5th Cir.1976).

Affirmed.