HEANEY, Circuit Judge,
dissenting.
I respectfully dissent. The School District has violated Sarah’s right to be educated in the “least restrictive environment,” which, under the IDEA, requires that she be educated with nondisabled students to the maximum extent appropriate. The record conclusively shows that this has not been the case,[5] and that the proposed IEP, scheduled to take effect if the School District prevails on this appeal, will do little to improve Sarah’s access to a more fully inclusive education for the reasons set forth below.
My concerns with the majority’s opinion are three-fold. First, the majority defers to the administrator’s determination that because Sarah will spend seventy percent of her day in general education under the proposed IEP, she will attend school in the least restrictive environment to the maximum extent appropriate. I disagree. Simply expanding her time in the general education classroom does not satisfy the IDEA unless Sarah is provided with the requisite aids and services that would enhance her access to rich educational opportunities, in accordance with her IEP, amidst her nondisabled peers to the maximum extent appropriate. Appellants and their expert have provided ample evidence of the missed opportunities for supporting Sarah’s inclusion and growth in general education under her current IEP, and the multitude of modifications that could be implemented in general education to better serve her educational and social needs, in accordance with an updated IEP, for most of her day. The district court erred in failing to adopt the appellants’ expert’s recommendations, which, in my view, would provide her with the education she is legally entitled to.
Second, Sarah’s time in general education settings unlawfully subjects her to academic and social isolation. On these occasions, she is segregated from her non-disabled peers, precluding Sarah’s participation in the routines of typical school and adolescent culture and development of relationships with nondisabled students. She arrives late and leaves class early because she changes classes while the hallways are empty, she interacts solely with the paraprofessional while in class, and she engages in tasks unrelated to the general education curriculum. In homeroom class, the record shows that Sarah sat at a table along the side of the room because she did not have an assigned desk. While other students worked on teacher appreciation cards, Sarah looked at a picture book. During lunch, Sarah ate with the paraprofessional at a table in the common lunchroom, but none of her nondisabled peers interacted with her. While in social studies class, her nondisabled peers read a unit about Asia while Sarah colored the top of a Xeroxed calendar. Beyond the IEP meetings, the record demonstrates that little has been done to support Sarah’s integration into a nonsegregated environment. There appears to be little, if any, collaboration between special education and general education teachers in designing and implementing lessons that are academically appropriate for Sarah and sufficiently related to her peers’ curriculum.
*1072 The majority asserts that the School District intends to improve Sarah’s inclusion in general education settings by developing an age-appropriate schedule book, training staff how to walk with Sarah down hallways, assigning Sarah to a homeroom class located closer to her locker, and requiring Sarah’s case manager to meet with Sarah’s “education teacher on a weekly basis.” These cursory modifications to Sarah’s IEP fail to improve the overall integrity of her inclusion in general education.
Unfortunately, Sarah’s participation in general education in this school district has deprived her of the benefits of a progressive inclusion program: recognition that she is a valued and visible member of the school community; exposure to age-appropriate and varied curriculum and instruction; exposure to positive language and behavioral models of typically developing peers; and the development of social and academic relationships with general education teachers and nondisabled students. While the IDEA “does not require that a school either maximize a student’s potential or provide the best possible education at public expense,” Fort Zumwalt Sch. Dist. v. Clynes, 119 F.3d 607, 612 (8th Cir.1997), and discourages courts from substituting their own notions of educational policy for those of trained educators, Neosho R-V Sch. Dist., 315 F.3d at 1028, the School District fell far short of its required goal of providing her with the least restrictive environment to the maximum extent appropriate. Appellants’ expert, Dr. Udvari-Solner, has expressed a reasonable concern that the School District’s attempt at mainstreaming Sarah was ineffective and failed to meet her IEP goals. The questionable quality of Sarah’s integration into general education makes a comparative analysis of the benefits of general education and special education difficult, at best.
With regard to the majority’s suggestion that Dr. Udvari-Solner’s expertise in special education practices is deficient, the record shows that she teaches graduate and undergraduate courses in elementary education, secondary education, and special education at the University of Wisconsin, Madison. (Appellants’ App. Vol. II at 238.) She has supervised and trained education students who work with autistic children, and she teaches her students how to lesson plan, implement differentiated curriculum and cooperative learning techniques in special education. (Id. at 239.) She also directly assists teachers in the Madison public schools to serve students with autism and severe multiple disabilities. (Id. at 238.) The School District’s expert witness disagreed with Dr. Udvari-Solner’s assessment of Sarah’s IEPs. Given this conflicting expert testimony, it was inappropriate to grant summary judgment in favor of the School District. Rather, the district court should have “weighed and evaluated the directly contradictory expert testimony” and made its findings of fact. Hoefelman v. Conservation Comm’n of the Mo. Dep’t of Conservation, 718 F.2d 281, 285 (8th Cir.1983). It failed to do so here.
Finally, the record reveals that the STARS program is outdated and in direct conflict with best curriculum practices in special education. It appears to offer Sarah fewer opportunities to improve her adaptive behavior, self-help, daily living, social, and communication skills than a mainstreamed context would. The STARS classroom may be unnecessarily restrictive, in that it limits Sarah’s ability to learn relevant functional skills and independence that a segregated environment is designed to address. In the School District’s Response to Report by Dr. Udvari-Solner, the School District explained that “[a] functional skill is one that provides the student with the opportunity to develop *1073 his/her level of personal independence and integrity.” (Appellee’s App. at A-114.) Yet, Sarah spends much of her instructional time engaged in matching colors, shapes, and patterns, and listening to music and books intended for toddlers. The classroom walls are covered with preschool materials that have little to do with the age-appropriate skills she is expected to learn and practice, as articulated in her IEP. She sorts toothbrushes and plastic dinosaurs, and helps “bake” cupcakes by placing a cupcake wrapper in a tin. She plays duck-duck-goose. Such tasks appear to be unconnected with meaningful activities that are performed at home, in school, and in vocational settings. Additionally, during the expert’s two-day observation of Sarah in the STARS classroom, only one student spoke to Sarah using a complete sentence, and the staff spoke to the disabled students using an exaggerated and unnatural tone of voice. She also noted that Sarah had no opportunities to interact with nondisabled peers while in the STARS classroom. Instead, Sarah used a locker, a kitchen, sink, and bathroom in the special education wing of the school, which is isolated from general education classrooms and hallways.
In light of the fact that the School District insists that Sarah cannot benefit from greater inclusion in general education in spite of appellants’ strenuous objection, and given Dr. Udvari-Solner’s legitimate concerns regarding the quality of programming in STARS and in general education, it was clear error for the district court to hold that the School District complied with the IDEA in developing and implementing the IEP proposed to the parents on March 14, 2004 and to grant the School District’s motion for summary judgment on the administrative record.

. From third grade through fifth grade, Sarah was included in general education for more than seventy percent of her school day. When she was advanced to middle school, the School District advised the Pachls that Sarah would be placed in the STARS program, reducing her time in general education from more than seventy percent to less than thirty percent a day. It is unclear from the record which IEP has been implemented during litigation.